PEPSICO, INC., and Wilson Sporting Goods Co., Petitioners,

v.

Honorable Thomas R. McMILLEN, Judge, United States District Court for the Northern District of Illinois, Respondent.

No. 85–1932.

United States Court of Appeals, Seventh Circuit.

Submitted June 3, 1985.

Decided June 6, 1985.

Before CUDAHY, ESCHBACH and POSNER, Circuit Judges.

POSNER, Circuit Judge.

On June 3, 1985, the defendants in an antitrust suit pending before Judge McMillen in the Northern District of Illinois petitioned us under 28 U.S.C. § 1651 for a writ of mandamus directing the judge to recuse himself from presiding in the case. At the time the petition was filed, Judge McMillen had merely indicated informally that he would not recuse himself; no formal motion of recusal had been filed or acted on. We suspended consideration to give the defendants a chance to file, and the judge to rule on, the motion. The judge denied the formal motion, the parties have submitted additional affidavits, and the matter is now ripe for our decision.

The events leading up to the unusual problem presented by the petition for mandamus began some months ago when Judge McMillen reached retirement age and took senior status. He decided to explore the possibility of resigning from the bench and resuming the practice of law rather than continuing in senior or retired status. He discussed this possibility with the law firm that had employed him before he became a judge, and negotiations proceeded satisfactorily, but he decided to also "test the waters" with other Chicago law firms. To this end he made contact with an old friend of his who was a "headhunter" and who agreed to contact some dozen Chicago firms to see whether any of them might be interested in employing, under various restrictions specified by the judge, a federal district judge who would be resigning from the bench. Although no names were to be mentioned, it was common knowledge in Chicago legal circles that Judge McMillen was contemplating resignation, and no other federal judge in the city was thought to be similarly inclined.

Judge McMillen recalls having told his friend the "headhunter" not to contact either Schiff Hardin & Waite, one of the counsel for the defendants in the antitrust

Thomas R. McMillen, Chicago, Ill., pro se.

Roger Pascal, Schiff Hardin & Waite, Chicago, Ill., Arthur S. Friedman, Friedman & Gass, New York City, Marguerite S. Stephens, Howrey & Simon, Washington, D.C., for petitioners.

case, or Sachnoff Weaver & Rubenstein, Ltd., counsel for the plaintiff (the Dunlop tire company). The "headhunter" does not recall any such limitation. Judge McMillen had instructed him not to contact other firms that had matters pending before the judge; the disagreement is over whether he had identified the Schiff Hardin and Sachnoff firms as such firms. In any event, whether authorized to or no, the "headhunter" called both firms. Schiff Hardin informed him that it was not interested in hiring the resigning federal district judge (whom it knew to be Judge McMillen). Mr. Sachnoff was out of the office when the "headhunter" called him; he never returned the call. There is an irreconcilable difference of recollection concerning what Mr. Sachnoff told Judge McMillen and assembled counsel in Judge McMillen's chambers when this matter first came up; unfortunately no transcript of the conference was made. Mr. Sachnoff and his associates recall his having said at the conference that he had told his secretary to tell the "headhunter" if the latter called back that the Sachnoff firm had no interest in hiring the judge, either, while opposing counsel recall Mr. Sachnoff having said that he had told his secretary to tell the "headhunter" that the Sachnoff firm had no interest in hiring the judge "at this time." Meanwhile, Judge McMillen has decided to sign on with his old law firm.

There would be no actual impropriety if Judge McMillen were allowed to continue to preside over the trial in this case (which began on June 3). Judge McMillen has no realistic prospect of ever working for either law firm. If he feels any disappointment at the fact that neither firm expressed an interest in hiring him, the disappointment presumably is with both firms and would provide no motive for favoring one in the trial of the case. We have, in fact, no reason to think he does or did feel any such disappointment. The firms were contacted by mistake, and all concerned were aware that it would be unethical for a law firm that had a case pending before a judge to be at the same time negotiating with him over possible future employment

with the firm. Moreover, since Judge McMillen attached various conditions to his being willing to work for a law firm after resignation, no stigma of rejection can attach to the fact that some and perhaps most law firms would not consider themselves able to comply with the conditions, and therefore would not be in a position to offer Judge McMillen employment. Judge McMillen is a judge of unblemished honor and sterling character, and the motion to recuse him did not allege and could not have alleged any actual impropriety in his handling of this matter.

Nevertheless we reluctantly conclude that recusal is required because of the appearance of partiality that would be created by Judge McMillen's continuing to preside in this case. Section 455(a) of the Judicial Code requires a federal judge to recuse himself "in any proceeding in which his impartiality might reasonably be questioned," and we have read this to require recusal whenever there is "a reasonable basis" for a finding of an "appearance of partiality under the facts and circumstances" of the case. *SCA Services, Inc. v. Morgan,* 557 F.2d 110, 116 (7th Cir.1977) (per curiam). Although we have found no cases factually like the present, the relationship—familial (as in *Morgan*) or familial and financial (as in *Potashnick v. Port City Construction Co.,* 609 F.2d 1101 (5th Cir.1980))—between a judge and a lawyer in a case before him is of course a familiar basis for recusal. *Morgan* makes clear that mandamus is an appropriate remedy against a judge who refuses to recuse himself when required to do so by the statutory standard. See 557 F.2d at 117–18.

The test for an appearance of partiality is, as the language from *Morgan* indicates, whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case. Recognizing the inherently subjective character of this ostensibly objective test, we are nevertheless forced to the con-

clusion that such an observer would entertain such a doubt in this case. The responses of Schiff Hardin and of the Sachnoff firm to the "headhunter's" inquires were asymmetrical, and this regardless of whose recollections are accurate concerning the chambers conference, a matter that will never be resolved. Schiff Hardin after consideration of the question informed the "headhunter" (and through him Judge McMillen) that it was not interested in hiring the judge. The Sachnoff firm never spoke to the "headhunter." Mr. Sachnoff did not return his call. It was not until the issue of recusal came up that the Sachnoff firm made clear its lack of interest in hiring Judge McMillen. Whether it did that because it genuinely lacked any interest in hiring the judge, or did it just to oppose more effectively its opponents' motion to recuse the judge, will never be known. Schiff Hardin's rejection of the judge was definitive; the character and motive for the Sachnoff firm's rejection of him will never be known. An objective observer might wonder whether Judge McMillen might not at some unconscious level favor the firm, Sachnoff, that had not as definitively rejected him.

█ Beyond that and more important, we think recusal is required when, at the very time a case is about to go to trial before a judge, he is in negotiation—albeit preliminary, tentative, indirect, unintentional, and ultimately unsuccessful—with a lawyer or law firm or party in the case over his future employment. This would be clear enough if the negotiation were with only one side of the case, for a judge cannot have a prospective financial relationship with one side yet persuade the other that he can judge fairly in the case. If the prospect extends to both parties, the element of bias is less distinct, but the appearance of partiality is not purged completely. The appearance of equal justice requires that the judge not be exploring the prospects of employment with one lawyer or all lawyers appearing in a case before him. The dignity and independence of the judiciary are diminished when the judge comes before the lawyers in the case in the role of a suppliant for employment. The public cannot be confident that a case tried under such conditions will be decided in accordance with the highest traditions of the judiciary.

Our holding is narrow. We do not explore the outer bounds of propriety in a resigning judge's negotiating with law firms for future employment. We deal with an unusual case in which, only days before trial is to begin, the trial judge discovers that he has been in communication (albeit through an agent rather than in person) with the law firms representing the parties, concerning the possibility that one of the law firms might make him an offer of employment upon his resignation from the bench. A fully informed and objective observer might wonder whether the judge could decide the case with the requisite aloofness and disinterest when he had just solicited (if unintentionally) employment by the law firms in the case. This conclusion requires recusal.

We repeat that Judge McMillen is accused of, and has committed, no impropriety. The exploration of employment possibilities with firms appearing in a case about to be tried before him was accidental. The accident however makes it impossible for the trial to proceed under Judge McMillen's direction without creating an appearance of partiality. We therefore reluctantly grant the petition for mandamus and direct Judge McMillen to recuse himself. The trial will be rescheduled before another district judge in accordance with the rules of the district court. No costs will be awarded in this court.

PETITION GRANTED.