### In re FORTY–EIGHT INSULATIONS, INC., Debtor.

### Bankruptcy No. 85 B 05061.

United States Bankruptcy Court, N.D. Illinois, E.D.

March 15, 1988.

Terry J. Malik, Michael P. O'Neil, Winston & Strawn, Chicago, Ill., for Forty–Eight Insulation.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The Debtor in possession, Forty–Eight Insulations, Inc., has moved pursuant to 28 U.S.C. § 455(a) for an Order recusing me from presiding in its Chapter 11 case. The Debtor alleges that my impartiality in this case might reasonably be questioned solely on the ground that it may appear to an observer that I could not treat the Debtor's attorneys with impartiality. Forty–Eight does not assert that there is any appear-

ance of bias on my part against it (except to the extent that it is a client of its attorneys), nor that there is any appearance that I have a personal interest in this case.[1] Neither does the Debtor assert that I have any actual bias. Because I conclude that my impartiality in this case could not reasonably be questioned solely because of my contacts with Forty–Eight Insulations' lawyers, the motion is denied.

## THE FACTS

In May, 1981, Energy Cooperative, Inc., ("ECI"), the owner and operator of an oil refinery, filed a voluntary petition under Chapter 11 of the Bankruptcy Code. ECI was represented by the law firm of Nachman, Munitz and Sweig, Ltd. The Nachman firm has since merged its practice with that of Winston & Strawn, the firm that represents Forty–Eight Insulations in this case. Former members of the Nachman firm, now members of Winston & Strawn, have been and will be active on behalf of Forty–Eight Insulations in this case.

As attorneys for ECI, the Nachman firm filed a complaint against Phillips Petroleum Company to recover a balance due under a contract between ECI and Phillips to exchange petroleum products. That case was settled and in September, 1982 the Bankruptcy Court entered an order dismissing it "with prejudice". Shortly thereafter, the Nachman firm filed a complaint to recover a preferential transfer related to the same exchange contract.

In May, 1984, the ECI case was converted to case under Chapter 7 and Jay A. Steinberg was subsequently appointed Trustee. The Trustee retained my former law firm, Miller, Shakman, Nathan & Hamilton in October, 1984. Thereafter, I was very active in the representation of the ECI Trustee and estate before becoming a Bankruptcy Judge on January 1, 1988.

1. Indeed, the grounds for recusal asserted here would exist in any case in which a party is represented by the same attorneys who represented the Debtor here. In fact, in a wholly unrelated case, *In re Lawrence Lagrotteria* 83 B 13253, the plaintiff in an adversary proceeding to determine dischargeability of a debt in a Chapter 7 case, *Bank of Commerce and Industry v. Lagrotteria,* 84 A 0390, is represented by the same attorney and has moved for recusal on the same grounds. Motion of Plaintiff for Recusal, 84 A 0390, 83 B 13253, filed March 2, 1988.

The Trustee, represented by my former firm, substituted as plaintiff in the preference case against Phillips.

Phillips moved to dismiss the preference proceeding on the grounds that the order dismissing the first proceeding to collect the account balance was *res judicata* as to the second proceeding to recover the preferential transfer. Both the District Court and the Seventh Circuit agreed, and the proceeding to recover the preferential transfer was dismissed. See, *Matter of Energy Co-op, Inc.*, 814 F.2d 1226 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987).

According to the Seventh Circuit, an order (the "Compromise Authorization Order") entered by the Bankruptcy Court early in the ECI case authorized ECI to settle account collection matters while preserving any preference claims against the same party. But the Order dismissing the Phillips case "with prejudice" nevertheless barred the preference action against Phillips. "The burden was on ECI, the party seeking to bring the second claim, to insure that the order was not inconsistent with the reservation of right contained in the Compromise Authorization Order." 814 F.2d at 1235, n. 10. The underlying facts (only marginally relevant here) are more fully set forth in the Seventh Circuit's opinion.

Following the Seventh Circuit's decision that the preference proceeding was barred by the "with prejudice" order entered in the first action against Phillips, I, as attorney for the Trustee, filed a complaint against the Nachman firm alleging that by permitting that order to be entered without preserving the estate's right to the preference claim, the Nachman firm had been negligent.

The Nachman firm and its former members, through their defense attorneys, have answered the complaint, alleging several defenses. One of the defenses alleges that my former firm and I were also negligent in that we failed to adequately investigate the intent of the parties with respect to the reservation of the preference claim and failed to seek a vacatur or modification of the September, 1982 order dismissing the first proceeding with prejudice. That malpractice proceeding (*Energy Cooperative, Inc., v. Nachman, Munitz & Sweig, Ltd.*, 81 B 05811, 87 A 0917) is pending before another judge in this Court.

## CONCLUSIONS OF LAW

According to the Debtor, "The Recusal Motion made pursuant to 28 U.S.C. § 455(a), was brought on the premise that an objective, disinterested and fully informed person may well conclude from the nature of the Complaint and Affirmative Defenses that Judge Barliant's impartiality may reasonably be questioned when former attorneys of the Nachman Firm appear before him." Memorandum of Law in Support of Motion of Debtor for Recusal 4. The Debtor goes on to "emphasize[ ] that it is not accusing Judge Barliant of any misconduct or impropriety. Nor is Forty-Eight arguing that Judge Barliant would in fact be [partial] in this case." *Id.*, 9.[2]

As the Debtor correctly notes, it is not my actual feelings about this case that is at issue. Rather, under 28 U.S.C. § 455(a),

> Any Justice, Judge or Magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

This is the provision of federal law that requires recusal if there is an appearance of partiality, "whether or not the judge is actually biased." *United States v. Balistrieri*, 779 F.2d 1191, 1204 (7th Cir.1985) *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1490, 89 L.Ed.2d 892 (1986). "The test for an appearance of partiality is ... whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." *Pepsico v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985). "A judge's impartiality might 'reasonably be

---

**2.** Of course, if I felt any "personal bias or prejudice concerning a party" I would be required to recuse myself, whether or not any party moved for my recusal on that ground. 28 U.S.C. § 455(b)(1). I feel no such bias or prejudice here.

questioned' only when a well-informed observer would doubt the judge's objectivity and disinterest." *In the Matter of National Union Fire Insurance,* 839 F.2d 1226, 1228 (7th Cir.1988).

■ Some courts refuse to base disqualification under Section 455(a) solely upon apparent animosity towards counsel. *Gilbert v. City of Little Rock, Ark.,* 722 F.2d 1390, 1399 (8th Cir.1983) *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984); *Davis v. Board of School Commissioners,* 517 F.2d 1044, 1052 (5th Cir.1975) *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *United States v. Sibla,* 624 F.2d 864, 869 (9th Cir.1980). Those authorities require a showing of the appearance of bias against the party, not the attorney.[3] Such a narrow reading of Section 455(a) is, in my opinion, not justified by its language or the opinions of this Circuit. *See, National Union Fire Insurance,* at 1231 (suggesting that recusal under Section 455(a) might be based on strained relations between judge and counsel). Nevertheless, as *Gilbert, Davis* and *Sibla* emphasize, Section 455(a) requires an appearance of partiality in the case, not just dislike of the attorneys. An appearance of partiality against a party cannot simply be presumed from a rancorous relationship with the attorneys for that party. *See, National Union Fire Insurance,* at 1232 ("Visible annoyance [with counsel] is no reason for recusal...."). An apparent antagonism towards an attorney must be of such character and apparent intensity to warrant a reasonable belief that the judge might not be able to impartially consider the arguments of that attorney in the case before the court.

Although the Seventh Circuit has never squarely decided what standard is applicable to a Section 455(a) motion based upon extra-judicial antagonistic relations between a judge and counsel, it has decided the mirror-image case. In *United States v. Murphy,* 768 F.2d 1518 (7th Cir.1985) *cert. denied,* 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), the trial judge and U.S. Attorney were very close friends—so close that they and their families vacationed together immediately after the judge sentenced the defendant successfully prosecuted by the U.S. Attorney. The Seventh Circuit discussed the test for recusal based on a friendly judge-attorney relationship.

> When a question arises about friendship between a judge and a lawyer, "[t]he twofold test is whether the judge feels capable of disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded." Advisory Opinion No. 11, Interim Advisory Committee on Judicial Activities (1970).
>
> The statutory standard puts to the judge a question about the objective state of the legal and lay culture. The court must consider whether an astute observer in either culture would conclude that the relation between judge and lawyer (a) is very much out of the ordinary course, and (b) presents a potential for actual impropriety if the worst implications are realized....
>
> ... The ordinary standards of conduct of the legal profession reflect judgments about the likelihood of actual impropriety in a particular case. Unless the conduct is substantially out of the ordinary, it is unnecessary to pursue the further question whether the conduct presents the appearance of impropriety—although it is always possible to inquire into actual impropriety no matter how common the conduct may be.

*Murphy,* 768 F.2d at 1537. There is no reason to apply a more liberal standard where the judge-attorney extra-judicial relationship is apparently antagonistic.

■ Turning to the present motion, Forty–Eight Insulations' first argument is that by putting my signature to the complaint against the Nachman firm, I evidenced a low opinion of that firm's professional competence generally, and that an observer

---

**3.** It should be noted that those cases did not involve allegations of the appearance of bias against attorneys based upon extra-judicial activities, as is the allegation here. Therefore, it is not entirely clear that the present motion would be rejected out-of-hand in the Circuits where those cases were decided. *See, e.g., Davis,* 517 F.2d at 1052.

might therefore reasonably believe that I could not be unbiased in any case in which members of that firm participate. That argument must be rejected for two reasons, without even applying the *Murphy* test. First, the malpractice complaint charges the Nachman firm with one mistake in one case. It is not reasonable to conclude from that allegation of a single instance of neglect that I have a low opinion of the competence of any member of the firm. Lawyers, even the best, make mistakes. The former Nachman firm lawyers enjoy excellent reputations for their abilities to handle complex Chapter 11 cases like this one. Particularly given that fact, one mistake in an unrelated case does not demonstrate to any reasonable person that the lawyers are incompetent in this or any other case. Therefore, my allegation of a single mistake cannot reasonably be viewed as the demonstration of a belief that the Nachman firm lawyers are incompetent.

Second, even if an observer might have reason to believe that I have a low opinion of the professional abilities of the members of the Nachman firm, that is not reason to believe that I might not be impartial in this case. A judge need not have the highest opinion of the professional abilities of counsel to be fair to the parties. Otherwise, many judges would be forced to recuse themselves in many cases.

Finally, applying the *Murphy* test, the filing of a complaint charging lawyers with professional negligence is not "very much out of the ordinary course", as will more fully be discussed below. That is especially true here. It was at least reasonable for the ECI Trustee and his lawyers to read the Seventh Circuit opinion in the Phillips proceeding as holding that, if they intended to preserve the preference claim they subsequently filed, ECI's lawyers should not have allowed a "with prejudice" order to be entered in the proceeding to

collect the account balance. A bankruptcy trustee is a fiduciary, not free to ignore apparent causes of action that might benefit the estate. On these facts, the filing of the complaint cannot be reasonably viewed as anything other than the performance of professional and fiduciary obligations, in the ordinary course.

■ Forty–Eight Insulations' second argument stems from the Nachman firm's allegations in the malpractice case that my former firm and I breached a duty of care in handling the ECI matter. "[I]t is certainly conceivable that the public could interpret any ruling against the attorneys formerly of the Nachman Firm as retribution for the Nachman Firm's allegation of malpractice in the ECI case." Memorandum of Law in Support of Motion of Debtor for Recusal 8–9.

The test under Section 455(a) is not whether bias is "conceivable", but "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." *Pepsico,* 764 F.2d at 460. The Debtor's argument for a more liberal standard, based on the use of the word "might" in Section 455(a) ("impartiality *might* reasonably be questioned") is not consistent with the law of this Circuit. A judge should not recuse himself simply because his impartiality might be doubted; rather, that doubt must be reasonably based on the facts. *Cf., New York City Development Corp. v. Hart,* 796 F.2d 976, 980–81 (7th Cir.1986). Indeed, "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly," *National Union Fire Insurance,* 1229, and a judge may not "bend over backwards, disqualifying himself whenever a party expresses dissatisfaction about his service in the case." *Id.,* at 1230, n. *.[4]

**4.** The Debtor principally relies upon two authorities for its broader standard. In *In re Krisle,* 54 B.R. 330, 346–47 (Bkrtcy.D.S.D.1985), one of the debtors was suing the judge for $3,250,000. Here, the Nachman firm is not seeking any relief from me, nor I from them. In addition,

the court in *Krisle* seems to have applied a more liberal standard than Seventh Circuit opinions would allow: "When I asked myself how this would look to the average person in the streets —would he, knowing all of the circumstances of the case, harbor doubts about my impartiality

Applying these principles, especially as particularized in *Murphy*, the Debtor has not shown that grounds exist for recusal. First, nothing that the former Nachman firm lawyers or I have done in the ECI case is "very much out of the ordinary." The allegations made on both sides are within the recognized scope of the duties of advocates in our adversary system. To paraphrase the late Mayor Washington, litigation ain't beanbag. Whether it is malpractice litigation, motions for sanctions under Federal Rules of Civil Procedure 11 or 37, contested petitions for attorneys' fees, or simply a hotly contested lawsuit, lawyers frequently challenge other lawyers' performance of their professional duties.

Moreover, the Nachman firm lawyers have not gone out of their way to criticize my and my former firm's performance in the ECI case. My firm and I, as attorneys for the ECI Trustee, initiated the proceeding by filing a professional negligence complaint, seeking a judgment for millions of dollars. The Nachman firm lawyers seek no relief at all from me or anyone else, except to be left alone. Their allegations are made for no reason other than to defend themselves against a very large claim. It is certainly not outside the ordinary course for professionals to defend themselves against malpractice claims.

In short, the contacts between the former Nachman firm and me that are relied upon by the Debtor have been at a professional, not a personal, level, and have not been outside the scope of lawyers' duties.[5] Of course, allegations of professional negligence may sting at a personal level and,

given the pride most lawyers take in their work, probably will. But it cannot be presumed that the result of such a sting will be retribution against a party who has nothing to do with the malpractice case. "[I]t is one thing to assume that judges are human beings with the usual human emotions and another to attribute to them a malevolent, a calculating vindictiveness." *Union Carbide v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 716 (7th Cir.1986).

For these reasons, Forty–Eight Insulations' Motion for Recusal is denied.

—I can only conclude he would." 54 B.R. at 347. In so holding, the *Krisle* court applied similar language from the other case cited by the Debtor in support of its proposed broad standard, *Potashnik v. Port City Const. Co.,* 609 F.2d 1101, 1111 (5th Cir.1980), *cert. denied,* 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980), with the important difference that the Fifth Circuit specified a "reasonable man", not just "the average person", as the standard against which to measure Section 455(a) motions.

Although the Fifth Circuit in *Potashnik* emphasized the word "might" in Section 455(a), whereas the Seventh Circuit has tended to emphasize the word "reasonably", *see, New York City Development Corp.,* 796 F.2d at 981, the two

Circuits do not seem to be far apart in their interpretation of Section 455(a). But the facts in *Potashnik*, like those in *Krisle*, are much different than those here. In that case, an attorney for a party was involved in business dealings with, and represented, the judge. Under both *Murphy* and *Pepsico*, it is likely that such facts would have resulted in recusal in this Circuit. But under those same authorities, the facts here do not.

5. On the other hand, in *Pepsico*, also relied upon by the Debtor, the judge found himself "in the role of a suppliant for employment." 764 F.2d at 461. My only role in the ECI case was as a lawyer.