**In re Raymond F. NOWAK, Jr., and Helen M. Nowak, Debtors.**

**Bankruptcy No. 92 B 1876.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 20, 1992.

Terrence Spears, Belvidere, Ill., for debtors.

D. Patrick Mullarkey, Tax Div., Dept. of Justice, Washington, D.C.

Janice Newport, Chicago, Ill., for Chapt. 13 Trustee.

Victoria Crosley, Office of I.R.S. Dist. Counsel, Chicago, Ill., for I.R.S.

## MEMORANDUM OPINION ON TRUSTEE'S MOTION TO DISMISS AND DEBTOR'S MOTION TO RECUSE

JACK B. SCHMETTERER, Bankruptcy Judge.

In this bankruptcy proceeding, filed under Chapter 13 of Title 11 U.S.C., the Chapter 13 Trustee moved to dismiss this bankruptcy proceeding for Debtors' failure to file a Plan. Debtors then filed a Plan, but also asserted that this Court is disqualified and should not pass on Trustee's motions. For reasons set forth below, the disqualification motion is denied and the Trustee's motion has been continued to give debtors an opportunity to cure patent defects in their filed Plan, if they can.

### FACTUAL BACKGROUND

In January, 1991, Raymond Nowak and three other people sued 43 named defendants and their alleged co-conspirators (10,-000 "John Does" and 10,000 "Jane Does") in a 268–page complaint entitled *Mark Sato, et al. v. Federal Emergency Management Agency, et al.*, 91 C 314 (N.D.Ill.). Defendants were said to have conspired to commit treason among many other crimes alleged. I was one of the named defendants, along with most Bankruptcy Judges and District Judges in this District, most Seventh Circuit Judges, and many other public officials and private persons. District Court Judge Shadur dismissed the complaint *sua sponte* one week after it was filed for failure to state grounds for relief, 1991 WL 10036.[1] Later, Mr. Harrigan (who was among the plaintiffs in *Sato*) filed his Chapter 13 case, refused to file a plan but moved to disqualify me, realleging the *Sato* allegations along with a new charge of murder, and conspiracy with the Deputy Assistant U.S. Attorney along with other judges in this circuit. For reasons stated from the bench, his disqualification motion was denied. Then that case was dismissed for failure to file any plan. On January 28, 1992, Raymond Nowak and his wife filed their pending joint petition under Chapter 13. The only creditor scheduled by them is the Internal Revenue Service (the "IRS"). The total of IRS claims scheduled amounts to $427,915.44.

These Debtors did not file any plan herein within fifteen days as required by Rule 3015(b), Fed.R.Bankr.P., so the Chapter 13

---

1. A copy of this opinion is attached as Appendix A.

Standing Trustee filed a motion to dismiss this proceeding. The motion came before the Court on March 10, 1992. The Debtors responded that day by filing a plan and also filed their motion to disqualify this judge. A copy of the Plan was served on the Trustee but not on the IRS, and it may be that the IRS and the U.S. Attorney's office does not know of this case.

From examination of Debtors' actions thus far and the documents filed by them, three things become clear. First, the IRS claims that Debtors owe large amounts for taxes, and they are very angry about this. Second, they believe that the federal judges, the IRS, the U.S. Attorney, and other federal agencies in northern Illinois are in a conspiracy to commit many crimes. Therefore, they are convinced that I and all other judges in the Seventh Circuit share a common prejudice towards them because they are trying to bring this alleged conspiracy to light. Finally, the Debtors feel that their treatment is tied to the treatment of the other plaintiffs in the *Sato* case and to their colleague, Mr. Sherman Skolnick. They maintain that any action which affects one member of their group creates a bias against all of them.

## DISCUSSION

### *Jurisdiction*

This matter is before the Court pursuant to 28 U.S.C. § 157 and is referred here under Local District Court Rule 2.33. The Court has subject matter jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### *Claim of Disqualification*

The asserted disqualification is first addressed because it goes to the authority of this Court to rule on Trustee's motion to dismiss. Debtors claim that the Court has a personal bias (they call it "an extreme hatred") against them for several reasons. They first point to the *Sato* case in which Mr. Nowak was a plaintiff, and in which

this judge along with other judges and over 20,000 other people, were defendants. They thereby argue in effect that a judge who is attacked by someone in a suit dismissed for failure to plead a cause of action is disqualified from sitting on any future case brought by that person—a theory that here applies, if at all, to all judges in the Seventh Circuit.

They also claim that bias is demonstrated by this Court's conduct in the case of *In re Harrigan*, 91 B 24035. The *Harrigan* case under Chapter 13 of the Bankruptcy Code was dismissed pursuant to 11 U.S.C. § 1307 and Rule 3015, Fed.R.Bankr.P., for failure to file a plan. Mr. Harrigan had filed a motion to disqualify which was denied by the court, which ruling these movants feel showed prejudice. On its face, it does not. See Transcript of Proceedings, *In re Harrigan*, 91 B 24035 (Feb. 25, 1992).[2]

They also complain about this Court's rulings and remarks from the bench in another case in which they were observers but not parties in interest, *Wire Cloth Products Inc.*, 130 B.R. 798 (Bkrtcy. N.D.Ill.1991). They further assert that their association with Mr. Sato and Mr. Skolnick brings prejudice against them. In the *Sato* and *Harrigan* cases, and through their counsel's remarks before the bench here, they have by now accused me and most other judges of the Bankruptcy Court, the District Court, and the Seventh Circuit Court of Appeals of conspiracy to commit treason, murder, cover up, and miscellaneous other crimes and wrongs. No evidence or facts to support those beliefs are set forth. When this motion was presented, their counsel asserted that he could not lay these charges before the federal or state prosecutors because he says they are part of the "cover-up". Like the Queen in *Through the Looking Glass*, they are prepared to assert and believe anything.[3]

Debtors do not cite authority, but they seek my disqualification and recusal from

---

**2.** This transcript is attached to this opinion as Exhibit B.

**3.** *See,* Lewis Carroll, *Through the Looking Glass,* Ch. V, at p. 174 (Signet Classic ed., Penguin Books 1960).

their Chapter 13 bankruptcy case pursuant to 28 U.S.C. § 455, which provides:

> **(a)** Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> **(b)** He shall also disqualify himself in the following circumstances:
>
> > **(1)** Where he has personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
> >
> > ....

 The Seventh Circuit has stated that the test for disqualification under § 455 is whether "an objective, disinterested observer fully informed of the facts [of the case] ... would entertain a significant doubt that justice be done" thereby requiring recusal. *Union Carbide Corp. v. U.S. Cutting Service,* 782 F.2d 710, 715 (1986), citing *Pepsico, Inc. v. McMillen,* 764 F.2d 458, 460 (7th Cir.1985); see also *Matter of Nat. Union Fire Ins. Co. of Pittsburgh,* 839 F.2d 1226, 1229 (7th Cir.1988). This is an objective test. Therefore, the basis for doubting the impartiality of the Court must be thought of as reasonable in the mind of a reasonable person. *United States v. Martorano,* 620 F.2d 912, 919 (1st Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980), citing *United States v. Cowden,* 545 F.2d 257, 265 (1st Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). A judge is not disqualified under § 455 merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial. *Idaho v. Freeman,* 507 F.Supp. 706, 722 (D.Idaho 1981), citing S.Rep. No. 93–419, 93rd Cong., 1st Sess. 1973, p. 5. Likewise, a judge's personal view as to his impartiality is not a basis for ruling on a recusal motion. As Judge Shadur explained in *Hampton v. Hanrahan,* 499 F.Supp. 640, 645 (N.D.Ill.1980), *appeal dismissed, Hampton v. Chicago,* 643 F.2d 478 (7th Cir.1981), "[t]hough I am morally certain that I would in fact be impartial in this proceeding, that is not the standard; the test is rather whether my impartiality 'might reasonably be questioned'."

 A necessary corollary to the objective "reasonable person" standard is that recusal may not be based on frivolous, speculative, or irrational motions. As explained in *M.K. Metals, Inc. v. National Steel Corp.,* 593 F.Supp. 991, 993–994 (N.D.Ill.1984), a judge

> should not recuse himself on an unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative power over the assignment of judges.

The Seventh Circuit has expanded on this concept in *Nat. Union Fire Ins. Co.,* 839 F.2d at 1229, stating,

> Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, ... because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping. (citation omitted)

See also, *New York City Housing Development Corp. v. Hart,* 796 F.2d 976, 980–81 (7th Cir.1986). This Court has a duty not to disqualify itself when faced with clearly frivolous motions to recuse. See *General Motors Acceptance Corp. v. Long Chevrolet, Inc.,* 1989 Bankr.Lexis 72 (Bankr. N.D.Ill. Jan. 24, 1989).

 Another well-settled principle is that a motion for recusal under § 455 "must be based upon prejudice from an extra-judicial source." *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.,* 838 F.2d 1287 (D.C.Cir.1988). A judge cannot be disqualified merely because of his or her actions in a prior judicial proceeding. See *United States v. Haldeman,* 559 F.2d 31, 133 (D.C.Cir.1976) (en banc), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) ("recusal is not indicated by prior judicial rulings, or in-court comments prompted by developments in the case or prior legal proceedings, or the exercise of related judicial functions.") This is true even when the judge has made harsh comments towards the movant or the movant's counsel in an earlier proceeding. See *In re Cooper,* 821 F.2d 833, 841 (1st Cir.1987)

(holding that a judge is not disqualified for making disparaging remarks about the tactics of the client's counsel or the credibility of a witness in an earlier proceeding). Finally, and pointedly,

.... a debtor should not be permitted to frustrate the administration of justice by asserting frivolous claims against sitting judges. The appearance of a conflict of interest is not created by the assertion of a frivolous claim against a judge.

*Matter of Erickson,* 107 B.R. 222, 224 (Bankr.D.Neb.1989) and cases cited.

■ Applying the above standards to the present case, the Debtors' contentions do not form a sufficient basis to reasonably question the Court's impartiality in the mind of a reasonable third person. The *Sato* case was dismissed as meritless on its face one week after it was filed, and no defendant had to respond to it. The many attacks contained in that suit provided no reasonable or even rational basis for questioning this Court's impartiality towards the Debtors. The Debtors' view that the Court is biased against them based on the *Harrigan* case is equally frivolous. They reason essentially that a ruling against Mr. Harrigan's motion to disqualify means that the Court is prejudiced because they associate with him. As pointed out above, comments made by this judge in prior cases which concern people with whom Debtors associate are not a basis for disqualification, and a party's irrational or baseless fear of bias does not create a bias. Moreover, the comments they complain of on their face consisted of a ruling with cited authority.

The contention that this and all judges in this Circuit are prejudiced against Debtors and all members of the group who cooperate in these various litigation efforts is likewise unsupported. They cannot seek to escape the requirements of the Bankruptcy Code and the Internal Revenue Code by creative accusations asserted as a basis to deny that any judge can adjudicate any

issues in their cases. This motion to recuse is entirely frivolous and must be denied.[4]

### *Dismissal*

■ As matters presently stand, Debtors' joint Chapter 13 petition and pending Plan is subject to dismissal for three reasons:

1. *Debtors are not eligible to file under Chapter 13.*

Section 109(e) of the Bankruptcy Code defines who is eligible to be a Chapter 13 debtor. It provides:

Only an individual with regular income that owes on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000 may be a debtor under chapter 13 of this title.

The debts to IRS scheduled herein total $427,915.44. This clearly exceeds the eligibility limits in Chapter 13.

The Bankruptcy Code requires that Chapter 13 debtors make regular payments to the Trustee, and such payments require a regular income. Therefore, a regular source of income is a necessary element of eligibility under Chapter 13. *In re Terry,* 630 F.2d 634 (8th Cir.1980); *In re Cheatham,* 91 B.R. 377 (E.D.N.C.1988). There is no showing that Debtors have any regular income since the Debtors have not filed all schedules required under Rule 1007, Fed. R.Bankr.P. Furthermore, the Debtors specifically state in paragraph 2 of their plan that, "[Debtors], the [Debtors'] employers, or other entity (although unknown and as

---

**4.** The "rule of necessity" is applicable to this case because the Debtors maintain that every judge in the Seventh Circuit is biased against them. *See Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 825, 106 S.Ct. 1580, 1587, 89 L.Ed.2d 823

(1986); and *United States v. Will,* 449 U.S. 200, 214, 101 S.Ct. 471, 480, 66 L.Ed.2d 392 (1980). However, the Court need not reach this issue since the motion to disqualify is denied for other reasons.

yet unagreed to by [Debtors]) shall remit monthly sums on a per week basis to the Trustee ... when [the IRS] submits and proves its claim (which [Debtors] assert will be false and fraudulent)." Debtors do not even represent that they have any particular sources of income to make any payments.

### 2. *Facial Deficiencies in the Filed Plan.*

Even if Debtors were eligible under § 109(e), their petition must still be dismissed for failure to file an acceptable plan, unless they find a way to cure the patent deficiencies in their filed Plan. Section 1321 of the Bankruptcy Code provides that, "[t]he debtor must file a plan," and both the Code and the Federal Rules of Bankruptcy Procedure expand upon this simple command. Section 1322(a)(1) requires that Chapter 13 plans "provide for the submission of all or such portion of future earnings or other future income of the debtor supervision and control of the trustee as is necessary for the execution of the plan." Section 1322(b)(10) further allows Chapter 13 plans to "include any other appropriate provision not inconsistent with this title." See also, 11 U.S.C. § 1325(a)(1) (plans may only be confirmed if they comply with other applicable provisions of the Bankruptcy Code). Rule 3015(b), Fed.R.Bankr.P., requires that Chapter 13 plans be filed within fifteen days of the petition. Debtors are to commence payments to the Trustee the month after they file their case, well before the Plan is confirmed or even considered. 11 U.S.C. § 1326(a)(1).

■ The Debtors' plan is facially defective for several reasons. First, it was not filed within 15 days of the petition. This issue has been considered after notice and a hearing on the Trustee's motion to dismiss. Therefore, under 11 U.S.C. § 1307(c)(3), the case may be dismissed on this ground alone. However, the Court has given Debtors leeway on this issue, has considered their late-filed plan, and gave them time to see if they can file a lawful Amended Plan.

■ Paragraph 3 of their present Plan is the provision for plan payments. It states that, "[i]f alleged creditor IRS can prove its claim without bribery, blackmail or extortion (which [Debtors] assert cannot be done ...), then and only then, [Debtors] will remit the sum of $500 each month...." This conditional offer to pay the Trustee violates § 1326(a)(1) because it makes clear that Debtors have no intention of paying the Trustee anything from month to month unless and until the IRS claims are first disposed of. This provision also violates 11 U.S.C. § 502(a) by seeking to shift the burden of taking initiative to assert validity of the IRS claim to the IRS. A proof of claim constitutes *prima facie* evidence of the validity and amount of a creditor's claim, and the burden of going forward to object to the claim lies upon the debtor. Rule 3001(f), Fed.R.Bankr.P. Debtors cannot insert a plan provision which violates this precept in an effort to avoid paying the Trustee monthly for possible payment to their creditor should they lose their dispute with that creditor. Therefore, the Court cannot accept this plan due to its facial defects.

### 3. *No Payments Made to Trustee.*

■ Finally, the case must be dismissed pursuant to 11 U.S.C. § 1307(c)(4) for failure as yet to make any payments to the Chapter 13 Trustee. Section 1326(a)(1) of the Bankruptcy Code provides, "[u]nless the court orders otherwise, the debtor shall commence making the payments proposed by the plan within 30 days after the plan is filed." The reason for this requirement is discussed in 5 *Collier on Bankruptcy* ¶ 1326.01[2] (15th ed. 1991),

Congress also feared that some chapter 13 plans were being jeopardized by debtors becoming accustomed to higher living expenses when they were relieved of prior debt payments and not yet responsible for plan payments. Trustees

reported that when plan payments begin promptly they had a greater chance of success.

Therefore, Congress added subsection (a) to section 1326 of the Code, which generally required plan payments to begin within thirty days of the filing of the plan. (citations omitted)

Clearly, chapter 13 was not enacted to grant debtors a hiatus from paying bills while their liability is adjudicated and a payment plan worked out. Debtors have ignored § 1326 by inserting paragraph 2 into their plan, which conditions payment to the Trustee on the success of the IRS in proving its claim. The Court has not and will not enter an order allowing the Debtors to do this. Therefore, the Debtors have violated § 1326(a)(1) since no intention to pay anything to the Chapter 13 Trustee has been demonstrated or offered, and no payments have been made.

## CONCLUSION

Debtors have converted their dispute with the IRS into anger against and distrust of all federal judges in this Circuit, and a willingness to assert belief in fictional misdeeds by all those judges so as to disqualify any possible forum from deciding their disputes with the IRS. They also seek to carry on this pattern of dispute and dislike of all judges into their Chapter 13 case in which they appear to be disqualified as possible debtors and have as yet shown no intent to comply with their duties under the Bankruptcy Code.

For the reasons discussed above, by separate orders, the Debtors' motion to recuse and disqualify is denied, and the Trustee's

motion to dismiss presented March 10, 1992, was set for hearing to determine whether debtors can cure the deficiencies discussed herein.

## APPENDIX A

In the United States District Court for the Northern District of Illinois Eastern Division

Mark Sato, et al.,[*]

Plaintiffs,

v.

Federal Emergency Management

Agency, et al.,

Defendants.

No. 91 C 314

## MEMORANDUM OPINION AND ORDER

Mark Sato ("Sato"), Francis Harrigan, Raymond Nowak and Donald Thibodeaux ("Thibodeaux"), purportedly suing on behalf of themselves and "all others similarly situated,"[1] have filed an appallingly prolix and turgid Complaint—whose text is fully 168 pages in length and is accompanied by 100 additional pages of tightly-spaced Appendices N through S that would doubtless expand to twice that size if they had been typewritten in a normal pica typeface with conventional double spacing[2]—against 43 specifically named defendants and up to 20,000 more of their alleged co-conspirators (10,000 "John Does" and 10,000 "Jane

---

[*] See Attachment 1 to Appendix A for a complete listing of the parties.

**1.** None of the four named plaintiffs is a lawyer. Even leaving aside the question whether there are indeed "others similarly situated" (whatever that may mean in the context of the extraordinary Complaint), plaintiffs could not of course be authorized to represent those others—even though at page 20 of the Complaint Sato and Thibodeaux modestly say they are "better qualified than members of the bar for purposes of this Complaint...."

**2.** Fed.R.Civ.P. ("Rule") 8(a) says in relevant part (emphasis added):

> A pleading which sets forth a claim for relief ... shall contain (1) *a short and plain statement* of the grounds upon which the court's jurisdiction depends, ... (2) *a short and plain statement* of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Roes"). This Court has read plaintiffs' submission, and it strikes both the Complaint and this action sua sponte.

Despite plaintiffs' self-perception as to their qualifications (see n. 1), the hodgepodge that they have assembled here is an abomination. Even with the benefit of the liberal standard prescribed by *Hishon v. King & Spalding*, 467 U.S. 69, 73, [104 S.Ct. 2229, 2232, 81 L.Ed.2d 59] (1984) coupled with the especially generous reading commanded for pro se pleadings (see *Haines v. Kerner*, 404 U.S. 519, 520–21, [92 S.Ct. 594, 595–96, 30 L.Ed.2d 652] (1972) (per curiam)), the Complaint does not pass muster. It is not just a matter of its length, though its egregious noncompliance with Rule 8(a) is bad enough. Rather it would be an imposition to require any of the defendants to attempt to answer the Complaint or (far more likely) to expend the effort necessary to move that it be stricken, for either of those alternatives would subject the defendants to the same chore of reading and attempted analysis that this Court was compelled to engage in as a matter of duty.

Somewhere in the ocean of words that plaintiffs have tendered there may perhaps be a drop of pure (or at least purifiable) liquid—a potentially viable cause of action against someone that meets even the minimal standards prescribed by the cases. But in the nature of *this* Complaint, it is for plaintiffs and not for this Court or for any defendant to be required to carry out the necessary process of distillation. As said at the outset, both the Complaint and this action are dismissed.[3]

/s/ Milton I. Shadur
Milton I. Shadur
United States District Judge

Date: January 23, 1991

3. Among other things, in the bizarre world that plaintiffs appear to occupy, they simultaneously purport to deny the jurisdiction of this federal court while at the same time seeming to submit themselves to it in some way. In light of the nature of a number of the allegations, it may

ATTACHMENT 1

In the United States District Court
for the Northern District of Illinois,
Eastern Division

Mark Sato, Francis L. Harrigan, Raymond F. Nowak, Donald P. Thibodeaux, & all others similarly situated, Plaintiffs,

v.

The Federal Emergency Management Agency, as used as a RICO enterprise;

Julius W. Becton, Jr., individually, in his capacity as FEMA Director, and his predecessors and successors, if any; & all other FEMA/NSC operatives, whether known or unknown;

The Internal Revenue Service, as used as a RICO enterprise;

Fred T. Goldberg, Jr., individually, in his capacity as a RICO co-conspirator, and as Commissioner of Internal Revenue, and his predecessors and successors, if any;

Richard S. Wintrode, individually, in his capacity as a RICO co-conspirator, and as IRS District Director, and his predecessors and successors, if any;

The Office of the United States Attorney, Northern District of Illinois, as used as a RICO enterprise;

Fred Foreman, individually, in his capacity as RICO co-conspirator, and as a FEMA operative, but not in his capacity as U.S. Attorney, and his predecessors and successors, if any;

The United States District Court, Northern District of Illinois, as used as a RICO enterprise;

James B. Moran, individually, in his capacity as RICO co-conspirator, and as a FEMA operative, but not in his capacity as judge, and his predecessors and successors, if any;

well be that they were inviting the current result so that whatever judge were to receive this case via random assignment might be added as a co-defendant in what would seem likely to be plaintiffs' inevitable next venture into litigation.

162

The United States Court of Appeals, Seventh Circuit, as used as a RICO enterprise;

William J. Bauer, individually, in his capacity as RICO co-conspirator, and as a FEMA operative, but not in his capacity as judge, and his predecessors and successors, if any;

The United States Bankruptcy Court, Northern District of Illinois, as used as a RICO enterprise;

Jack Schmetterer, individually, in his capacity as RICO co-conspirator, and as a FEMA operative, but not in his capacity as judge, and his predecessors and successors, if any;

The United States Tax Court, as used as a RICO enterprise;

Arthur L. Nims III, individually, in his capacity as RICO co-conspirator, and as a FEMA operative, but not in his capacity as judge, and his predecessors and successors, if any;

Ilana Diamond Rovner, *et ux*, individually and jointly, in their capacities as RICO co-conspirators, and in her capacity as FEMA operative, but not in her capacity as a judge;

Paul E. Plunkett, individually, in his capacity as RICO co-conspirator, and in his capacity as FEMA operative, but not in his capacity as judge;

Walter J. Cummings, Jr., individually, in his capacity as RICO co-conspirator, and in his capacity as FEMA operative, but not in his capacity as judge;

Eugene R. Wedoff, individually, in his capacity as FEMA operative, but not in his capacity as judge;

Erwin I. Katz, individually, in his capacity as FEMA operative, but not in his capacity as judge;

Laurence Whalen, individually, in his capacity as FEMA operative, but not in his capacity as judge;

Joel Gerber, individually, in his capacity as FEMA operative, but not in his capacity as judge;

George Marovich, individually, in his capacity as FEMA operative, but not in his capacity as judge;

Mayer, Brown & Platt, a law firm partnership;

Stanton A. Kessler, a senior partner of Mayer, Brown & Platt;

Jenner & Block, a law firm partnership;

Jerold Solovy, a senior partner of Jenner & Block;

Federal Reserve Bank, a private, foreign-controlled corporation;

Silas Keehn, president of the Federal Reserve Bank of Chicago;

Laurance Rockefeller;

Lowell Becraft;

William J. Benson;

Norma Davenport;

Jeffrey A. Dickstein;

Andrew B. Spiegel;

Robert G. Stift;

Sheldon Waxman,

David Brown,

James Babowice,

Robert J. Lepri,

Harry Zaidenberg,

Citicorp Savings,

First National Bank of Lincolnwood & all of the agents, officers, representatives, attorneys, employees, servants, informants, contractors, and subcontractors, whether known or unknown, whether predecessors or successors, if any, of the above named Plaintiffs & all other unnamed co-conspirators similarly situated, past, present and future, including, but not limited to, JOHN DOES #1–10000 and JANE ROES #1–10000,

Defendants.

APPENDIX B

Filed March 6, 1992.

In the United States Bankruptcy Court for the Northern District of Illinois Eastern Division

In re:

Francis Harrigan,

Debtor.

91 B 24035

Chicago, Illinois February 25, 1992 9:30 o'clock a.m.

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE JACK B. SCHMETTERER

APPEARANCES:

For the Debtor: MR. JIM VASSILOS 6581 North Oliphant Street Chicago, Illinois 60631

For the U.S. Trustee: MS. JANICE NEWPORT Office of U.S. Trustee 11 East Adams Chicago, Illinois 60603

Also Present: MR. HARRIGAN

CONTRACT COURT REPORTERS: PULTZ, PETERS & ASSOCIATES, LTD. 19 South LaSalle Street Suite 1201 Chicago, Illinois 60603

THE CLERK: Francis Harrigan, 91 B 24035.

MR. VASSILOS: Your Honor, we have had a little difficulty—

THE COURT: Your appearance, please?

MR. VASSILOS: Jim Vassilos, your Honor, on behalf of Francis Harrigan. We have had a little difficulty getting this thing stamped filed. I'm wondering if we could—

THE COURT: What is the thing, sir?

MR. VASSILOS: The motion itself is to disqualify your Honor, and Judge—

THE COURT: Do you have an original motion and notice of motion, sir?

MR. VASSILOS: Yes, we gave that to your clerk, but she would not stamp the copy.

THE COURT: You have not filed a—you have not signed the proof of service, sir. I'm sorry, you have signed it. You haven't dated it. Do you want to date it?

MR. VASSILOS: Oh, I—yes, sir. I would be happy to.

THE COURT: Have you received it?

MS. NEWPORT: Yes, we—a faxed copy was sent to our office yesterday.

THE COURT: You are an attorney at law, Mr. Vassilos?

MR. VASSILOS: Yes, your Honor, I am.

THE COURT: You wish to file this thing which accuses every member of the court— of the Bankruptcy Court in Chicago of these things that you say here?

MR. VASSILOS: Well, I don't know that that is a proper capitalization of a nine page-document. I wish to file a document that has been signed by my client, signed by me, and attested to by Sherman Skolnick. That is what we are asking you to sign. Your characterization of it may not be completely accurate, your Honor.

THE COURT: My characterization was that this is a document making accusations against all the judges of this court. Do you dispute that characterization?

MR. VASSILOS: I think the document speaks for itself. I would be happy to read it into the record. In fact, I'm asking that it be made a part of the record your Honor. And I'm asking that it be filed.

THE COURT: Sir, let me tell you. I have read much much fiction in my time, but the type of accusations you seek to make against me and the judges of this court are the most extraordinary fiction I have ever seen in my life.

You accuse me of being part of a scheme to shut down production of strategic military parts during Dessert Storm.

You accuse—you say that Judge Schwartz and I have been summoned before a Grand Jury. I assure you, sir, we have not.

You say that the judges of this court were part of the October Surprise.

The delay release of U.S. hostages in Iran.

You've said that documents were destroyed with the connivance of me and a trustee.

The only correct thing I can see in here is the fact that this adversary complaint that

you filed against me and others accusing all of the judges, including the judges of the District Court and the Seventh Circuit, of great acts of corruption and conspiracy, you truly note that I recuse myself in that case since I was the named defendant and sent that for reassignment, and it was assigned to Judge Martin, a judge outside this district. You now make a scurrilous accusation against Judge Martin.

And you have indicated that something that you call the club, which I take to mean the judges of this court and others in the Seventh Circuit that you refer to them, you accuse us, meaning the judges of this court and the Circuit, of arranging to murder one or more Grand Jury witnesses.

MR. VASSILOS: Well, sir—

THE COURT: And you have attempted to suggest that we judges are responsible for the murder of a certain bankruptcy auctioneer in December of '91.

MR. VASSILOS: December 23, 1991, Judge Wallace—not Judge—

THE COURT: Sir, if you have any evidence that any member of this court has committed crimes, I suggest that you lay that evidence before the United States Attorney or States Attorney of Cook County.

You say that coverups in the murder of a—included a top official, who you name in the U.S. Attorney's Office.

And you say that, in your supposed motion for recusal, no judges in the Northern District of Illinois nor of the Seventh Circuit should enter this case.

Well, I'm not going to recuse myself based on this nonsense and fiction, nor based on the fact that you filed an insensible lawsuit against me because I was named in it, I sent to another judge—sent for reassignment to another judge.

You have made a number of generalized allegations regarding corruption in the District Court, the Court of Appeals, the Bankruptcy Court of the Northern District of Illinois, and the entire Seventh Circuit which has no factual basis to support it, and would not be grounds for any reason-able person to conclude that I have any lack of impartiality with respect to this case.

As a matter of fact, I cannot think that any reasonable person would have made these allegations let alone that any reasonable person would believe them.

I don't know Mr. Harrigan. I have no prejudice toward him. I don't know anything about him other than the fact that what is laid before me in the case which is before me.

Under these circumstances, it's incumbent upon me, as a judge in this court, not to recuse myself when there is lacking any basis for any reasonable person to believe that there is a basis for recusal based on what you have said.

I have to test this extraordinary document you wish to file by the standards under 28 U.S.C. 455(a). The test is whether an objective, disinterested observer fully informed of the facts would entertain a significant doubt that justice could be done, thereby requiring recusal under that section.

Union Carbide versus U.S. Cutting Service, 782 F.2d 710 at 715 (7th Cir.1986). Also a matter of National Union Fire Insurance of Pittsburgh, 839 F.2d 1226 at 1229 (7th Cir.1988). An asserted charge of reasonable basis for doubting impartiality must be grounded on facts which would create a reasonable doubt, not in the mind of the judge himself nor necessarily in the mind of the litigant, but rather in the mind of a reasonable person.

U.S. versus Martorano, 620 F.2d 912 at 919 (1st Cir.) cert. denied 449 U.S. 952 (1980) citing U.S. versus Cowden, 545 F.2d 257 at 265 (1st Cir.1976) cert. denied 430 U.S. 909 (1977). The language of Section 455(a) does not warrant allowing a litigant's fear of an adverse decision to be transformed into a fear that the judge will not be impartial.

Idaho versus Freeman, 507 F.Supp. 706, 722 (District Court of Idaho 1981) citing Senate Report No. 93–419, 93rd Congress First session. 1973, Page 5. As Judge Shadur correctly noted in Hampton versus

Hanrahan, 499 Fed Supp. 640 at 645 in the Northern District of Illinois, 1980 appealed dismissed Hampton versus Chicago, 643 F.2d 478 (7th Cir.1981).

Although I am morally certain that I would in fact be impartial, that is not the standard. The test is rather whether my impartiality might reasonably be questioned.

He elaborate—Judge Shadur elaborated on that standard in M.K. Metals, Inc., versus National Steel Corp., 593 Fed Supp. 991 (Northern District of Illinois, 1984.) Pointing out in his quote of In Re: United States, 666 F.2d 690 at 694 (First Cir.1981). That the first policy of Section 455(a) is that courts must not only be, but must seem to be, free of bias or prejudice. But that a second and less obvious policy is that a judge should not recuse himself on unsupported irrational, or highly tenuous speculation where he or she to do so at the price of maintaining the purity of appearance would be the power of litigants on third parties to exercise a negative veto power over the assignment of judges. M.K. Metals, 593 Fed Supp. at 993–994.

MR. VASSILOS: Well, we are supported by the affidavit.

THE COURT: Excuse me sir.

MR. VASSILOS: We had—

THE COURT: Just a moment, sir.

MR. VASSILOS: —Mr. Sherman Skolnick and we have six members of the public who think it is reasonable—

THE COURT: Sir.

MR. VASSILOS: —that you have been named in a lawsuit—

THE COURT: Sir, hold off. Sir, you are not going to make a speech here. And I am not going to hear from Mr. Sherman Skolnick or any friends that come in to make these allegations.

The propriety of recusal should be ascertained objectively without reference by the judge either to his perception of his own ability to maintain impartiality, or to the concerns of parties before him as opposed to the hypothetical reasonable person.

M.K. Metals, 593 Fed Supp. at 997. The U.S. Supreme Court has observed that, "A federal judge has the duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." Laird, Secretary of Defense versus Tatum, 409 U.S. 824, 837 (1972). Also see Judge Nordberg's opinion in Andersen versus Roszkowski, 681 Fed Supp. 1284 at 1290.

A recent 7th Circuit decision pointed out that judges have an obligation to litigants and their colleagues not to remove themselves needlessly. See matter of National Union Fire Insurance Co. of Pittsburgh, 839 F.2d 1226 at 1229, (7th Cir.1988). Now—

MR. VASSILOS: Our response is that it is reasonable.

THE COURT: I am not inviting a response, sir. I'm passing on your motion.

MR. VASSILOS: I haven't even presented it orally yet.

THE COURT: Sir, I don't need you to present it orally. You have presented enough in writing for me to know what your motion is, and I have read it.

MR. VASSILOS: Well, I'm asking that you allow it to be filed and made a part of this record.

THE COURT: Sir, I am quite sure that—let me go on with my ruling.

One case particularly pertinent is the matter of Rodney Erickson. Rodney Erickson versus Federal Land bank, 107(br), 222 Bankruptcy Court in Nebraska. The appearance of conflict of interest that the judge found is not created by the assertion of frivolous claims against the judge, and that Erickson Court cites a number of decisions for the proposition—for that proposition, that frivolous complaints may be ignored.

Pointing out that including Ely Rolling Mines, Inc., versus Lee, 385 F.2d, 188 at 191. Where the Circuit Court said that, "Counsel by filing specious pleadings cannot transmute a lawsuit between others and to the judge's own case solely for the purpose of disqualifying him."

What you have basically done is file one scurrilous lawsuit against me and all the judges of the District and of the Bankruptcy Court and of the Circuit claiming a fantastic amount of imaginative accusations. Since I was named I recuse myself. Because you filed that—and I will basically, repeat these allegations in a motion to recuse me, add a few others so as to attempt to taint other individuals, and wrap it all up in a request for recusal.

Under the authority I have cited, this conglomeration of fiction and imagination does not justify recusal. You cannot say nasty things about a judge and then say, "Judge, you are prejudice against me because you have said nasty things to me."

The motion to disqualify and request for an out of 7th Circuit judge, for reasons stated from the bench, is denied.

MR. VASSILOS: Well, it was not a fiction that Wall Mann [Wallace Lieberman] had two bullets put in his head.

THE COURT: Sir, if you have any witness that any judge from this court or of the U.S. Attorney's Office or someone else that you have accused here, has participated in putting a bullet in Mr. Lieberman, if that is how he died, I suggest you lay it before a prosecutor.

MR. VASSILOS: Two bullets, sir. About the head on December 23, 1991.

THE COURT: Sir, for reasons I stated your motion is denied.

Now, I want to set this matter today on a courtesy, which you may not understand, to your client, which he may not understand.

On January 7th the trustee moved to dismiss this bankruptcy case because the debtor has not filed a plan. He did not show up, nor did you. At that time I could have dismissed the case when he didn't appear. Instead I set it for today on notice to your client.

Has Mr. Harrigan filed a plan, sir?

MR. VASSILOS: No, he has not.

THE COURT: Have you filed an appearance for him in this Chapter 13 case, sir?

MR. VASSILOS: Yes.

THE COURT: When?

MR. VASSILOS: I don't have that portion of my file with me.

THE COURT: Have you filed an appearance, sir?

MR. VASSILOS: Yes, I have.

THE COURT: Have you in deed?

MR. VASSILOS: I believe, I have.

THE COURT: I will check the file. Will I find it in there?

MR. VASSILOS: I believe so.

THE COURT: If I don't fined it in the—

MR. VASSILOS: I can't get this filed so there is no telling what, your Honor, is—

THE COURT: If I don't find your appearance in there sir, then I will certainly not allow you to file this motion, sir, which you have signed.

Mr. Harrigan, sir, have you filed a plan?

MR. HARRIGAN: No.

THE COURT: Counsel, do you agree that Mr. Harrigan has not filed a plan?

MR. VASSILOS: I agree that the first issue before the Court is whether we can receive a fair hearing. That is the first issue.

THE COURT: Trustee, have you received a plan?

MS. NEWPORT: I have never seen a plan.

THE COURT: Mr. Harrigan agrees he has not filed a plan, this case is dismissed pursuant to 11 U.S.C. 1307(c)(3) for failure to file a plan.

MR. HARRIGAN: I believe you're prejudiced, Judge.

THE COURT: Well, sir, you can—

MR. HARRIGAN: I do.

THE COURT: —take your objection to a higher court. This case is dismissed. Get me the court file on this.

THE CLERK: Okay.

THE COURT: Mr. Vassilos, sir.

MR. VASSILOS: Yes, your Honor?

THE COURT: You must understand that if I do not find your appearance in this court—in that court file, then you have had no standing before me. Good morning, sir.

(Which were all of the proceedings held on this date in the above entitled matter.)

### CERTIFICATE

I hereby certify that the foregoing is a true and accurate transcript of proceedings held on February 25, 1992.

Dated: March 5, 1992. /s/Raymond F. Petrie