In re John A. MAURICE, Debtor.

**Bankruptcy No. 93 B 23478.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 12, 1994.

Order and Memorandum Opinion on Motion to Alter or Amend March 31, 1994.

Trial transcript at 11–11.

116

Kenneth A. Kozel, LaSalle, IL, for debtor John A. Maurice.

Gerald M. Hunter, Oglesby, IL, for plaintiff John F. Dornik.

Debbie D. Stassen, Office of Craig Phelps, Chicago, IL, for Craig Phelps, Chapter 13 Trustee.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

The following matters come before the Court: the motion of John F. Dornik ("Dornik") to lift the automatic stay and for other relief including sanctions against John A. Maurice, (the "Debtor"), and his attorney Kenneth Kozel ("Kozel"); the motion of Craig Phelps, the Chapter 13 standing trustee (the "Trustee") to dismiss the Debtor's Chapter 13 case; the Debtor's motion to dismiss Dornik's motion and to alter or amend an Order entered by the Court on November 24, 1993 (the "November 24th Order"); and the Debtor's motion for disqualification of the Court.

For the reasons set forth herein, the Court grants Dornik's motion and finally and fully lifts the automatic stay so that an appeal currently pending before the Circuit Court for the Seventh Judicial Circuit can be completed. The Court awards sanctions against the Debtor by way of dismissal of this case without prejudice to the pending appeal. The Court hereby imposes the sanction of mandatory continuing legal education against Kozel for violation of Federal Rule of Bankruptcy Procedure 9011. The Trustee's motion to dismiss is granted for the Debtor's failure to file a Chapter 13 plan as required by 11 U.S.C. § 1321 within the time required under Federal Rule of Bankruptcy Procedure 3015(b). The Debtor's motion to alter or amend the November 24th Order is granted to fully lift the automatic stay incidental to the dismissal of this case. The Debtor's motion to disqualify and to dismiss Dornik's motion are denied.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (G) and (O).

### II. FACTS AND BACKGROUND

The facts and background of the relationship between Dornik and the Debtor are set forth in an Opinion and Order entered in the Debtor's first bankruptcy case. See Dornik v. Maurice, 138 B.R. 890 (Bankr.N.D.Ill. 1992). Dornik's claim against the Debtor was reduced to judgment in an Illinois state court in 1987. The Debtor previously filed a

Chapter 13 case in 1989, which was subsequently converted to Chapter 7. Dornik filed a dischargeability complaint against the Debtor under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). The Court found the underlying debt non-dischargeable, and a motion for sanctions was allowed in favor of Dornik. *Id.* The Debtor's post-trial motion to alter or amend the judgment was subsequently denied. *See Dornik v. Maurice,* 1992 WL 111104, 1992 Bankr. LEXIS 740 (Bankr. N.D.Ill. Apr. 30, 1992). An appeal was taken therefrom and the Court was affirmed. *Maurice v. Dornik,* 1992 WL 308535, 1992 U.S.Dist. LEXIS 16032 (N.D.Ill. Oct. 19, 1992). The Debtor further appealed to the Circuit Court for the Seventh Judicial Circuit, which appeal remains pending. The Debtor failed to obtain a stay pending appeal. Dornik, meanwhile, went back to the Illinois state court to enforce the 1987 judgment. His collection efforts were effectively stayed, however, when the Debtor filed a second Chapter 13 case on November 8, 1993. At that time the Debtor filed a petition and listed Dornik as his only creditor. The Debtor then filed an application to pay the filing fees in installments, as contemplated by Federal Rule of Bankruptcy Procedure 1006(b). The Debtor initially paid $30.00 when his application to pay the filing fee in installments was granted by the Honorable Jack B. Schmetterer on November 10, 1993. Pursuant to that Order, the Debtor was required to pay an additional $40.00 on or before December 13, 1993, another $40.00 on or before January 13, 1994, and the final installment of $40.00 on February 14, 1994. To date, the first $40.00 installment has not been received.

On November 19, 1993, Dornik served out the instant motion to lift the automatic stay. He requested relief including allowing the oral arguments on the appeal set before the Seventh Circuit for December 2, 1993, to go forward. Dornik further contends that the instant case is frivolous and filed in bad faith. Dornik's motion was certified to have been personally served on the Debtor and Kozel on November 19, 1993, as well as mailed to the Trustee that day. The motion was accompanied with a notice that same would be presented for hearing on November 24, 1993,

in Chicago. The motion and notice of the hearing was first lodged with the Court on the morning of November 24, 1993, a few minutes before same was to be heard, but after Kozel telephoned the Court's chambers to see if the motion was on the Court's call for that day. After review of the motion and an unsuccessful attempt by one of the Court's staff to return Kozel's call, the Court entered the November 24th Order lifting the automatic stay to allow the appeal to proceed. The November 24th Order also continued a hearing on the motion for December 17, 1993 at the Court's regularly scheduled Joliet, Illinois date. Additionally, the November 24th Order granted Kozel leave to file responsive pleadings thereto by December 8, 1993. Dornik's attorney was ordered to file any reply by December 15, 1993, as well as serve a copy of the interim order on Kozel, the Clerk of the United States Court of Appeals for the Seventh Judicial Circuit, and the Trustee. Neither the Debtor nor Kozel appeared at the November 24, 1993 hearing.

The Debtor responded with his motion to alter or amend the November 24th Order contending that Kozel had telephoned the Court's chambers the morning of November 24, 1993, and was advised by an unnamed clerk that the motion was not on the Court's regular call. Thus, he did not attend. The Debtor's motion contends that the Court lacked jurisdiction and authority to take any action in Chicago because the matter should have been heard in Joliet, Illinois. In addition, on December 8, 1993, the Debtor served out his motion to dismiss, contending that Dornik's actions constitute improper harassment, and that Dornik's motion should be denied, and that the Debtor be given leave to file a petition for attorney's fees and costs against Dornik and his attorney.

The scheduled hearing on Dornik's motion was held in Joliet on December 17, 1993. Attorneys for Dornik, the Debtor, and the Trustee were present. Kozel filed and served in open court the motion to disqualify. At that time the Trustee presented and filed his motion to dismiss the case. The Court offered all parties an opportunity for an evidentiary hearing on the various motions.

The attorneys for the Debtor, Dornik and the Trustee all waived such opportunity to supplement the record with any additional evidence. Rather, they chose to rest on their pleadings. The Court granted leave to the various parties to file supplemental papers by December 30, 1993, after which all pending motions would be taken under advisement. The Court also advised that it intended to take judicial notice of the contents of the instant case file, to which no objection was raised. The only additional pleadings filed were by Dornik in opposition to the disqualification motion.

### III. DISCUSSION

#### A. Motion to Disqualify

■ The bases of the motion to disqualify and the challenge to the Court's impartiality under 28 U.S.C. § 455, made applicable by Bankruptcy Rule 5004(a), are the adverse rulings rendered in the prior bankruptcy case and adversary proceeding. The motion summarily concludes without any supporting facts that the Court treats the Debtor and Kozel differently than he treats other debtors and attorneys who come before him. The Debtor also complains that the November 24th Order was the product of a hearing that Kozel was advised would not take place. The Debtor thus contends that he and Kozel were misled and not treated as others. The relevant provisions of section 455 state as follows:

(a) Any justice, judge or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

28 U.S.C. § 455(a) and (b)(1).

The test for disqualification under section 455 is whether "an objective disinterested observer fully informed of the facts [of the case] ... would entertain significant doubt that justice be done." *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 715 (7th Cir.1986), *citing Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985). "Judges have an obligation to litigants and their colleagues not to remove themselves needlessly, ... because a change of umpire in mid-contest may require a great deal of work to be redone ... and facilitate judge-shopping." *In re National Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir.1988) (citation omitted).

■ A judge is presumed qualified to hear a proceeding and the movant has the burden of proving otherwise. *Idaho v. Freeman*, 478 F.Supp. 33 (D.Idaho 1979). A judge is not disqualified under section 455 merely because a litigant has transformed his fear of an adverse decision into a fear that the judge will not be impartial. *Idaho v. Freeman*, 507 F.Supp. 706, 762 (D.Idaho 1981), *citing* S.Rep. No. 93–419, 93rd Cong., 1st Sess.1973. Furthermore, a party moving for recusal or disqualification has the burden of producing facts which would raise such doubts. *Clay v. Doherty*, 608 F.Supp. 295, 299 (N.D.Ill.1985). A judge should not recuse himself if the alleged bias of the judge stems from the facts the judge learned when participating in the case in his judicial capacity. *In re M. Ibrahim Khan*, 751 F.2d 162 (6th Cir.1984); *United States v. Patrick*, 542 F.2d 381 (7th Cir.1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

■ To disqualify a judge, the asserted bias or prejudice must be personal and arise from extra-judicial matters. *United States v. Kelley*, 712 F.2d 884 (1st Cir.1983). The basis for disqualification for a lack of impartiality must be reasonable. *S.J. Groves & Sons & Co. v. International Brotherhood of Teamsters*, 581 F.2d 1241 (7th Cir.1978). A judge cannot be disqualified merely because of his prior rulings in a judicial proceeding. *See United States v. Haldeman*, 559 F.2d 31, 33 (D.C.Cir.1976) (en banc), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). As pointedly noted in *In re Erickson*, 107 B.R. 222 (Bankr.D.Neb.1989), "a debtor should not be permitted to frustrate the administration of justice by asserting frivolous claims against sitting judges. The appearance of a conflict of interest is not

created by the assertion of a frivolous claim against a judge." *Id.* at 224 (citations omitted).

Frivolous and improperly based suggestions that a judge recuse should be firmly declined. *Maier v. Orr,* 758 F.2d 1578 (Fed.Cir.1985). Section 455 does not entitle litigants to judges of their own choice. *Blizard v. Fielding,* 454 F.Supp. 318 (D.Mass. 1978), *aff'd,* 601 F.2d 1217 (1st Cir.1979). Recusal should not be based on frivolous, speculative or irrational grounds. *M.K. Metals, Inc. v. National Steel Corp.,* 593 F.Supp. 991, 993–994 (N.D.Ill.1984).

Recusals based on section 455 have been denied in this district in cases involving other bankruptcy judges on various grounds. Even apparent antagonism or animosity towards counsel must be of such character and intensity as to warrant a reasonable belief that the judge might not be able to impartially consider arguments in the case before the court. *See In re Forty–Eight Insulations, Inc.,* 84 B.R. 129 (Bankr.N.D.Ill.1988) (before assuming office, a bankruptcy judge, who while practicing law had signed a complaint against a law firm representing a debtor alleging legal malpractice, was not required to recuse himself). Disputed sua sponte fee hearings in Chapter 7 cases were the subject of recusal motions in *In re Wyslak,* 94 B.R. 540 (Bankr.N.D.Ill.1988) (recusal was not warranted despite debtor's approval of the fee, the Chapter 7 trustee's failure to question it, and the lack of any evidence that the fee was not warranted). In addition, *In re Memorial Estates, Inc.,* 90 B.R. 886 (N.D.Ill. 1988), involved affirmance of a denial by a bankruptcy judge to recuse in a contested matter wherein the judge had expressed impatience with counsel and where counsel erroneously suggested that the judge might be personally liable for his decisions.

Other bankruptcy case authorities from other districts and circuits are instructive. *See In re Casco Bay Lines, Inc.,* 17 B.R. 946 (1st Cir. BAP 1982) (a judge's comments during a trial or hearing of the matter before him are disqualifying only if they could show a fixed opinion or a closed mind on the merits of the case); *In re Winslow,* 107 B.R. 752 (D.Colo.1989) (alleged errors in rulings are remedied by appellate review of a judge's decision, not replacement of the judge); *In re Parr Meadows Racing Asso.,* 5 B.R. 564 (E.D.N.Y.1980) (ex parte communications between a bankruptcy judge and participants in a bankruptcy proceeding, in and of themselves, were held not grounds for recusal).

Applying the above standards to the present matter, the Court finds that the Debtor's contentions do not form a sufficient basis to reasonably question the Court's impartiality in the mind of an objective disinterested observer. The fact that the Debtor and Kozel did not prevail in the prior case and related adversary proceeding, and received sanctions for failure to follow and comply with orders entered therein, are insufficient grounds for disqualification in this case. In probably half of the contested matters decided by the Court, one side or the other loses and suffers an adverse result. In this light, neither the Debtor nor Kozel suffered any disparate treatment. They were not treated differently than others who have lost on the merits and received sanctions for violation of orders. They merely lost; they were not otherwise discriminated against.

Indeed, the results of the November 24, 1993 hearing, and the limited stay relief entered, despite the Debtor and Kozel's failure to attend the hearing, resulted in a very real benefit to the Debtor and Kozel—the Debtor's right to appeal the Court's Opinion and Order were preserved and enhanced rather than further delayed or impaired. The effect of the November 24th Order allowed the scheduled oral arguments before the Seventh Circuit to go forward. Rather than cutting off the Debtor's appellate rights, the November 24th Order allowed the Debtor to continue on with the direct appeal of this Court's Opinion. Had the Court denied Dornik's motion to lift the stay, it would have foreclosed the Debtor's appeal. Thus, the limited relief afforded by the November 24th Order really favored the Debtor's interest and did not serve as a disposition in which this Court's impartiality towards Dornik, the Debtor, or Kozel might reasonably be questioned.

Moreover, as the November 24th Order indicates, the Court, upon realizing Dornik's motion was going to be presented, directed the courtroom deputy to return the telephone call to Kozel's office to find out his position on the motion. At that point in time no one answered the return telephone call. The Court also notes that if Kozel placed the telephone call on November 24, 1993, from his law office in LaSalle, Illinois after 8:30 a.m., it is difficult, if not practically impossible for Kozel to have physically travelled from that office to the federal courthouse in Chicago, Illinois for the 9:30 a.m. hearing. Attempts were made by the Court's staff to telephonically confer with Kozel immediately in advance of the hearing. No reasonable person would seriously question the Court's impartiality in light of its ruling. Consequently, the motion to disqualify is denied.

### B. *Motion to Alter or Amend*

■ Contrary to the unsupported allegation in the Debtor's motion to alter or amend, the Court had full jurisdiction and authority to act on Dornik's motion in Chicago. The bankruptcy court's subject matter jurisdiction is solely derived from that of the district court pursuant to 28 U.S.C. § 1334(a) which provides that the district court has original and exclusive jurisdiction of all cases under Title 11. The United States District Court for the Northern District of Illinois pursuant to local General Rule 2.33(A) has automatically referred all bankruptcy cases under Title 11 to the bankruptcy judges, who under 28 U.S.C. § 151, collectively comprise a unit of the district court. 28 U.S.C. § 151 expressly provides that each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred and may hold regular or special sessions of court.

The stay relief requested by Dornik was a core proceeding under 28 U.S.C. § 157(b)(2)(G). Hence, the Court had full authority to enter interim and final orders regarding the relief requested. The authority of the Court as a result of the Congressional authority granted in 28 U.S.C. § 1334, and the automatic reference rule of the district court, as augmented by the provisions of 28 U.S.C. § 151, allowed the Court to enter the limited relief it did on November 24,

1993. Furthermore, 28 U.S.C. § 152(c) provides that each bankruptcy judge may hold court at such places within the judicial district in addition to the official duty station of such judge as the business of the court may require. Principally for convenience of the parties and local counsel, the Court holds additional regular sessions at the Joliet, Illinois federal facility. The actions taken were fully within the Court's subject matter jurisdiction and statutory authority. Although Dornik can be appropriately criticized for failing to timely present his motion in Joliet, and notice it for hearing at the regular prior Joliet call (held on November 19, 1993), the results, contrary to Kozel's argument, were not a sandbagging of the Debtor. The November 24th Order having been reconsidered, however, will be amended so as to allow all other matters, if any, in the pending appeal to be resolved. The automatic stay is fully lifted.

### C. *Trustee's Motion to Dismiss*

■ The Trustee cites to the mandatory requirement of section 1321 that debtors shall file a plan within the time provided by Bankruptcy Rule 3015(b). Under Rule 3015(b), if the plan is not filed with the debtor's petition, it shall be filed within fifteen days thereafter, and such time shall not be further extended except for cause shown and on notice as the Court may direct. Because the Debtor filed the Chapter 13 case on November 8, 1993, his plan was due by November 23, 1993. To date no plan has been filed, nor was there any timely extension request made.

■ A Chapter 13 debtor's failure to file a plan, as required by Rule 3015(b), alone warrants dismissal of the case. *In re Nowak*, 143 B.R. 154, 159 (Bankr.N.D.Ill.1992). Chapter 13 plans, as opposed to Chapter 11 plans, must be promptly filed. The issue of whether a Chapter 13 case should be dismissed for lack of good faith often involves not only the consideration and circumstances surrounding the filing of a petition, but also the contents of the debtor's plan. *In re Earl*, 140 B.R. 728 (Bankr.N.D.Ind.1992). Even brief delays have resulted in dismissal of Chapter 13 cases, albeit usually without prejudice. *See In re Greene*, 127 B.R. 805

(Bankr.N.D.Ohio 1991) (statement and plan filed nine days late resulted in dismissal without prejudice). The failure to timely file a Chapter 13 statement and plan after entry of an order to file same within fifteen days warranted dismissal of the case, absent a showing of excusable neglect. *In re Bracey,* 89 B.R. 6 (Bankr.D. Md.1988). No excuse of any kind has been offered here. The language of both section 1321 and Rule 3015(b) is mandatory, not directory. Moreover, this is not the Debtor's or Kozel's first foray into Chapter 13 reorganization. After all, the first case commenced as a Chapter 13 prior to its conversion. Accordingly, the Trustee's motion to dismiss is granted.

### D. *Dornik's Motion to Lift the Stay*

Dornik's motion seeks relief from the automatic stay because he challenges the Debtor's petition as a frivolous filing not made in good faith. As such, he effectively invokes section 362(d)(1) seeking to modify the stay "for cause." *See* 11 U.S.C. § 362(d)(1).[1] Dornik bears the burden under section 362 on the issue of the Debtor's equity in the property. *See* 11 U.S.C. § 362(g)(1). The Debtor has the burden on all other issues. *See* 11 U.S.C. § 362(g)(2).

Dornik has urged the Court to dismiss this case on a challenge to the Debtor's good faith in filing. Dornik has the burden of proof on this point. *See* 11 U.S.C. § 1307(c); *In re Love,* 957 F.2d 1350, 1355 (7th Cir.1992). *Love* set a totality of the circumstances standard for challenges to the good faith filing of a Chapter 13 case, in contrast to good faith challenges to plans filed on which the debtors have the burden of proof under section 1325(a)(3). *See also In re Rimgale,* 669 F.2d 426 (7th Cir.1982). *Rimgale* noted that the basic inquiry should be whether under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of the chapter. *Id.* at 431. Much of *Rimgale* is inapplicable here because the Debtor did not file a plan or schedules of assets or liabilities.

*In re Smith,* 848 F.2d 813 (7th Cir. 1988), noted the distinction between good faith in filing a Chapter 13 petition and good faith in proposing a Chapter 13 plan. *Id.* at 816 n. 3. *Smith* noted that such inquiries overlap. In *Smith,* however, the Seventh Circuit further emphasized that courts need to review under the totality of the circumstances, the timing of the bankruptcy filing, a debtor's motive in seeking Chapter 13 relief, and other relevant circumstances, as well as whether the debt would be non-dischargeable in Chapter 7. *Id.* at 818. A debtor's pre-filing conduct is relevant to the good faith inquiry. Under *Smith* the timing of the Debtor's filing of this case is suspect at best. The underlying judgment debt owed by the Debtor to Dornik was found to be non-dischargeable. That determination was not stayed by order entered under Federal Rule of Bankruptcy Procedure 8005. This case was filed to stave-off state court collection actions. Effectively, the Debtor has attempted to end-run the bankruptcy appellate process by failing to obtain a stay or posting a supersedeas bond, but rather file a new Chapter 13 petition, yet pay less than the full filing fee. The Debtor has violated the order for installment payment of the filing fees entered by Judge Schmetterer because the first installment of the filing fee has not been paid. Whatever the outer limits of good faith in filing may be, the Debtor exceeded same in this case. He has failed to pay the required filing fees and has never filed a plan or made the first payment under his plan. *See* 11 U.S.C. § 1326(a)(1). In addition, he has failed to file his required schedules and

---

1. The Seventh Circuit has set forth a three factor test for determining whether "cause" exists to lift the stay: (1) any great prejudice to either the bankruptcy estate of the Debtor will result from continuation of the civil suit; (2) the hardship to Dornik by maintenance of the stay considerably outweighs the hardship to the Debtor; and (3) Dornik has a probability of prevailing on the merits. *In re Fernstrom Storage & Van Co.,* 938 F.2d 731, 735 (7th Cir.1991), *citing In re Pro Football Weekly, Inc.,* 60 B.R. 824, 826 (N.D.Ill. 1986). Applying this test, the Court finds that the automatic stay should be fully and finally lifted so as to allow the pending appeal to continue. No prejudice to the Debtor or the estate will result from allowing the appeal to go forward. The hardship to Dornik considerably outweighs the prejudice to the Debtor because there is a substantial likelihood of success on the merits given the fact that the district court affirmed this Court's decision. Hence, these factors militate in favor of lifting the stay.

statement of affairs pursuant to Federal Rule of Bankruptcy Procedure 1007(c).

The Seventh Circuit's next case dealing with the good faith requirements of Chapter 13 was *In re Schaitz,* 913 F.2d 452 (7th Cir.1990), in which the totality of the circumstances test established by *Rimgale* and *Smith* was followed. *Schaitz* stands for the practical proposition that an opportunity for an evidentiary hearing needs to be held on good faith challenges in Chapter 13. That opportunity was afforded here at the December 17, 1993 hearing. All parties, however, declined and indicated that they would rest on their papers.

The Seventh Circuit decision most on point is *Love. Love* noted that dismissal is a harsh remedy and that courts should be more reluctant to dismiss a case under section 1307 for lack of good faith, rather than reject the plan for lack of good faith under section 1325(a)(3). 957 F.2d at 1356. *Love,* however, noted that the focus of the good faith inquiry under both sections is often whether the filing is fundamentally fair to the creditor, and whether it complies with the spirit of the Bankruptcy Code's provisions. *Love* also added some additional factors to consider, including: the nature of the debt; how it arose; the debtor's motive in filing the petition; how the debtor's actions affect the creditors; the debtor's treatment of creditors, before and after the petition is filed; whether the debtor has been forthcoming with the bankruptcy court and the creditors; any misstatements or omissions contained in the plan; and the debtor's motive, which can be inferred from pre-petition and post-petition conduct. *Id.* at 1357.

The Court, having taken judicial notice of what has happened in this case, and those papers that should have been filed and filing fees paid, but were not, finds the totality of the circumstances test is not difficult to apply. The filing is not particularly fair to Dornik because it has served as an inexpensive, yet equally effective alternative to obtaining a stay of the enforcement of the judgment entered in favor of Dornik without posting a supersedeas bond. The Debtor's motive in filing the instant case is obvious, and his attorney had admitted it was to stay

the collection action in state court. *See* Transcript of Proceedings before the Honorable Louis J. Perona on November 10, 1993 in the Thirteenth Judicial Circuit of Illinois, LaSalle County. The Debtor's treatment of other creditors is unknown because he has failed to file schedules listing any other creditors. He has not been forthcoming or complied with sections 1321 and 1326(a)(1) of the Bankruptcy Code and Bankruptcy Rule 3015(b). This case was filed to obtain the benefits of a stay and *de facto* supersedeas bond without its costs, in lieu of the Debtor's failure to obtain a stay of the District Court's order pending the appeal to the Seventh Circuit. This is an intriguing factual variant of what was found to be a bad faith filing in another case before this Court. *See In re Standfield,* 152 B.R. 528 (Bankr.N.D.Ill. 1993). The results, however, are effectively the same—dismissal of the case.

Furthermore, the Court cites *In re Roberts,* 117 B.R. 677 (Bankr.N.D.Okla.1990), which held that a Chapter 13 case filed by a debtor to avoid having to post a supersedeas bond in a state court appeal was filed in bad faith and thus dismissed. The *Roberts* court noted that it would not act as a substitute for a supersedeas bond. *Id.* at 678. This Court agrees with *Roberts,* and cites this case as additional authority for dismissal of the instant case as filed in bad faith. The Court's finding that this case was filed in bad faith constitutes further "cause" under section 362(d)(1) for lifting the stay.

### E. *Dornik's Request for Sanctions*

■ Bankruptcy Rule 9011(a) provides in relevant part:

Every petition, pleading, motion ... served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose,

such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed.R.Bankr.P. 9011(a).

Bankruptcy Rule 9011 and Federal Rule 11 of Civil Procedure are analogous and the authorities construing Rule 11 are applicable to the case at bar. Rule 9011 rather than Rule 11 (as recently amended effective December 1, 1993) applies in this forum. The current version of Bankruptcy Rule 9011 was not recently amended to be discretionary as were the provisions of Rule 11. The older case law on the former version of Rule 11, however, is still applicable. The Debtor and Kozel both signed the instant Chapter 13 petition thereby triggering the potential for Rule 9011 sanctions.

The Court has jurisdiction to impose sanctions under these Rules. *In re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir.1985); *In re Memorial Estates, Inc.*, 132 B.R. 19, 22 (N.D.Ill.1991). The primary purpose of both rules is to deter unnecessary filings for the benefit of the judicial system. *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077–1080 (7th Cir.1987), *cert. denied*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). It is well established that "[t]he standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1435 (7th Cir.1987); *see Dreis & Krump Mfg. Co. v. International Asso. of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 255 (7th Cir.1986).

The Seventh Circuit has interpreted Rule 11 as creating four criteria:

The Rule contains several strands. There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact." The attorney filing the complaint or other paper must satisfy all four requirements.

*Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir.1991) *quoting Szabo*, 823 F.2d at 1080.

A pleading, motion, or paper is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known to the attorney or the party signing the filing. *Frazier v. Cast*, 771 F.2d 259, 263–265 (7th Cir.1985). A filing or pleading is well-grounded in fact if it has a reasonable basis in fact. *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223 (7th Cir.1990) (factual pleading error did not rise to level of sanctionable conduct). "A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 542, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991).

The amount and nature of sanctions to be imposed is left to the discretion of the Court. *Insurance Ben. Admrs., Inc. v. Martin*, 871 F.2d 1354, 1359 (7th Cir.1989); *Frantz v. United States Powerlifting Federation*, 836 F.2d 1063, 1066 (7th Cir.1987); *Diversified Technologies Corp. v. Jerome Technologies, Inc.*, 118 F.R.D. 445, 453 (N.D.Ill. 1988). The severity of sanctions imposed should be proportionate to the violation, but should not be overly severe. *Brown*, 830 F.2d at 1437. Federal courts possess the inherent power to sanction for bad faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

From the foregoing it is clear that the purpose of filing this case was solely to delay. It has needlessly increased the

cost of litigation (in unspecified fees and expenses) to both Dornik and the Debtor. Accordingly, the appropriate sanction against the Debtor is dismissal of this case with prejudice to filing any subsequent bankruptcy cases without prior Court approval, but without prejudice to the pending appeal. *See In re Russo*, 94 B.R. 127 (Bankr.N.D.Ill. 1988); 11 U.S.C. § 349(a). In addition, appropriate sanctions against Kozel are in order. He is an experienced advocate who should know better than to so blatantly fail to comply with the requirements of the Code, the Rules, and the installment payment Order entered by Judge Schmetterer. There is no doubt in the Court's mind that the probable genesis for the filing of this case lay with Kozel rather than the Debtor.

 Common sanctions under Rule 9011 include the imposition of attorney's fees and costs on the offending party or his attorney. Unfortunately, Dornik has failed to furnish the Court with an itemization of his attorney's time rendered, services expended, and costs advanced to provide some objective criteria for assessment and imposition of costs and fees. Thus, the Court declines to award same. Another sanction occasionally invoked is that of a fine. The Court similarly declines to fine Kozel for several reasons. First, Kozel's paying any sum of money as a fine to the Clerk of the District Court would not significantly reduce the federal deficit or aid the public fisc. Second, Kozel's money can be better spent on other means providing more salient remedies for his conduct.

 A cursory review of the pleadings filed by him in this matter indicate that he has not only failed to file a plan and related papers for the Debtor, but has also violated several of the Standards of Professional Conduct within the Seventh Federal Judicial Circuit which, since December 1992, have been adopted. *See* Lawyers' Duties To Other Counsel, ¶ 2; Lawyers' Duties to the Court, ¶ 1. His pleadings filed in this matter show discourtesy to opposing counsel and parties, he makes disparaging personal remarks and displays acrimony, and he has made several *ad hominem* attacks on the Court. He litigates neither civilly nor respectfully. From the reported decisions in previous contested matters before this Court, Kozel has now established a pattern of filing unfounded and unsupported motions to disqualify the Court in every matter subsequent to the first adverse ruling to the Debtor. *See e.g., Attorney Registration & Disciplinary Com. of Supreme Court v. Betts*, 143 B.R. 1016 (Bankr.N.D.Ill.1992); *Attorney Registration & Disciplinary Com. of Supreme Court v. Betts*, 157 B.R. 631 (Bankr.N.D.Ill.1993). His confrontational approach based on frivolous and baseless *ad hominem* attacks is not limited to this Court alone. *See also United States v. Kozel*, 908 F.2d 205 (7th Cir.1990) (two instances of criminal contempt committed by Kozel in the Central District of Illinois were affirmed).

This pattern of conduct is not only uncivil and unprofessional, but unnecessary and counterproductive. It imposes additional time and diverts the resources of courts considering matters on their merits. Kozel's tenacious behavior crosses the line of what constitutes professional and civil behavior. It undermines the merits of his respective clients' cases. Kozel's pleadings and other papers frequently contain irrelevant and immaterial points, and his arguments are undeveloped and lack appropriate citations to controlling authorities. Indeed the concept of a serial filing in Chapter 13 after a Chapter 7 case is possible in light of *Johnson v. Home State Bank*, 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). After filing and receiving a discharge under Chapter 7, a debtor cannot file another Chapter 7 for six years from the first filing. *See* 11 U.S.C. § 727(a)(8). However, this important decision, like the above-cited quartet of seminal Seventh Circuit cases focusing on good faith in Chapter 13, have been ignored by or are unknown to Kozel, who should be aware of all of them and should have employed their teachings accordingly before filing this case. The Debtor's interests have not been well served here. Perhaps a confirmable plan could have been effectuated here, but none has ever been filed.

After reviewing a plethora of case law on the subject of sanctions, the Court notes that several courts have issued as a sanction the suspension of an attorney from the practice

of law. *See In re Assaf,* 119 B.R. 465 (E.D.Pa.1990); *In re Affairs with Flair, Inc.,* 123 B.R. 721 (Bankr.E.D.Pa.1990); *In re Pearson,* 108 B.R. 804 (Bankr.S.D.Fla.1989). This Court, however, is not inclined to issue such a harsh sanction against Kozel as the Court does not think it possesses the power to affect an attorney's right to practice law. Restrictions on attorneys' rights to practice inherently involve disciplinary matters better reserved to those bodies who clearly have the authority to suspend or disbar. For licensed Illinois attorneys who practice in this Court, those bodies are the Executive Committee of the United States District Court for the Northern District of Illinois under local General Rule 3.50 *et seq.* and the Supreme Court of the State of Illinois, *Chicago v. Higginbottom,* 219 Ill.App.3d 602, 162 Ill.Dec. 76, 579 N.E.2d 890 (1st Dist.1991); *In re Marriage of Dall,* 212 Ill.App.3d 85, 155 Ill.Dec. 520, 569 N.E.2d 1131 (5th Dist.1991), which has authorized the administrative supervision of disciplinary proceedings affecting members of the Illinois bar to be handled by the Attorney Registration and Disciplinary Commission. *See* Illinois Supreme Court Rule 751(a).

The Court finds the more appropriate sanction is to require Kozel to complete continuing legal education in the areas of bankruptcy and legal ethics. Other courts have employed this as a sanction. *See e.g., In re Pearson,* 108 B.R. 804 (Bankr.S.D.Fla.1989); *In re Assaf,* 119 B.R. 465 (E.D.Pa.1990). Continuing legal education is in order with courses pre-approved by the Court. Accordingly, Kozel is ordered to attend and complete sixteen (16) hours of continuing legal education in the area of bankruptcy, and eight (8) hours of continuing legal education in the area of legal ethics within twelve (12) months of the date of this Opinion. Upon completing the courses, Kozel is required to file a certificate with the Court certifying which courses he has attended, and furnish evidence from the sponsoring body that his attendance has been confirmed and that he completed such courses. If Kozel fails to timely comply with this mandatory continuing legal education, then the Court will recommend such other and further actions to the disciplinary authorities as may be appropriate.

Further, the Court is duty-bound to report unprofessional conduct by an attorney under the Code of Conduct for United States Judges, Canon 3(B)(3), and the Illinois Rules of Professional Conduct 8.3(a) of the Illinois Rules of Professional Conduct. Consequently, this matter will be referred to the Executive Committee for the Northern District of Illinois pursuant to local General Rule 3.50 *et seq.* and the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois pursuant to Illinois Supreme Court Rule 751 *et seq.* for such action as they deem appropriate.

## IV. *CONCLUSION*

For the reasons set forth herein, the Court grants Dornik's motion and lifts the automatic stay so that the pending appeal can proceed. The Court awards sanctions against the Debtor by way of dismissal of this bankruptcy case with prejudice, but without prejudice to the appeal. The Court further imposes sanctions against Kozel for violation of Federal Rule of Bankruptcy Procedure 9011, and requires him to complete continuing legal education in the areas of bankruptcy and legal ethics. The Trustee's motion to dismiss is also granted for the failure of the Debtor to file a plan as required by 11 U.S.C. § 1321 within the time provided under Federal Rule of Bankruptcy Procedure 3015(b). The Debtor's motion to alter or amend the November 24th Order is granted to finally and fully lift the automatic stay by reason of the dismissal of this bankruptcy case. Finally, the Debtor's motions to dismiss Dornik's motion and to disqualify the Court are denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

### *ORDER*

For reasons set forth in a Memorandum Opinion dated the 12th day of January, 1994, the Court hereby grants the motion of John F. Dornik and lifts the automatic stay so that

the appeal pending before the Circuit Court for the Seventh Judicial Circuit can be completed. The Court awards sanctions against the Debtor by way of dismissal of this bankruptcy case with prejudice, but without prejudice to the appeal. The Court further imposes sanctions against Kenneth Kozel for violation of Federal Rule of Bankruptcy Procedure 9011, and requires him to complete continuing legal education in the areas of bankruptcy and legal ethics. The motion of Craig Phelps, the Chapter 13 standing trustee, to dismiss is granted for the failure of the Debtor to file a plan as required by 11 U.S.C. § 1321 within the time provided under Federal Rule of Bankruptcy Procedure 3015(b). The Debtor's motion to alter or amend the November 24th Order is granted to finally and fully lift the automatic stay by reason of the dismissal of this bankruptcy case. Finally, the Debtor's motions to dismiss John F. Dornik's motion and to disqualify the Court are denied.

### *MEMORANDUM OPINION ON MOTION TO ALTER OR AMEND*

This matter comes before the Court on the motion of John A. Maurice (the "Debtor") to alter or amend a judgment entered by the Court on January 12, 1994, and on the motion of Kenneth A. Kozel ("Kozel"), attorney for the Debtor, to alter or amend the January 12, 1994 judgment as to him. In addition, the Debtor has moved to strike the response and the additional response of John F. Dornik ("Dornik") to the motion to alter or amend. For the reasons set forth herein, the Court denies the motion of Kozel. The Court grants, in part, the motion of the Debtor to amend the judgment. The case, however, remains dismissed with prejudice. The motions to strike Dornik's responses are denied.

### I. *JURISDICTION AND PROCEDURE*

The Court has jurisdiction to entertain these motions pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. These matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (G) and (O).

### II. *FACTS, BACKGROUND AND ARGUMENTS OF THE PARTIES*

On January 12, 1994, the Court entered a Memorandum Opinion and Order (the "Opinion") finding, in part, that Kozel had violated Federal Rule of Bankruptcy Procedure 9011, and for a sanction, required him to complete continuing legal education in the areas of bankruptcy and legal ethics. Further, the Court granted the Chapter 13 Standing Trustee's motion to dismiss the bankruptcy case because the Debtor had not filed a plan as required by 11 U.S.C. § 1321, and had failed to make any additional payments under an order allowing the filing fee to be paid in installments.

Kozel argues that the Court's findings were based upon unsupported conclusions and disparaging personal remarks lacking foundation. Further, Kozel contends that the Court violated the rules of strict confidentiality of the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, and the Executive Committee of the District Court for the Northern District of Illinois, by referring his conduct to those bodies in the Opinion instead of in a more discreet manner. Once again, Kozel renews his *ad hominem* attacks on this Court by arguing that the Court has become a witness in any disciplinary proceeding that may arise out of the Opinion. Kozel has expanded these attacks to include members of the Court's staff, the Clerk's Office, the Trustee, and the United States Marshal's Office. Kozel also states that the requirement to complete continuing legal education is in the nature of contempt and constitutes discipline, which the Court does not have the power to impose. Lastly, Kozel attacks the jurisdiction of this Court. He maintains that contempt proceedings are noncore matters that require a bankruptcy judge to submit proposed findings of fact and conclusions of law to the district court under 28 U.S.C. § 157(c)(1).

The Debtor's motion sets forth several points. First, the Debtor argues that he paid the first $40.00 installment payment. On January 11, 1994, the Debtor tendered a

check in the sum of $70.00 which included the $40.00 installment. The Debtor further contends that the Court misconstrued the order allowing the filing fee to be paid in installments. The Debtor states that the Court is so prejudiced against him and Kozel that the Court did not check the Clerk's Office to see if the payment had been made before entering the Opinion. Further, the Debtor maintains that a plan was mailed to the Clerk's Office in Rockford. The Debtor has attached a copy of this plan to the instant motion. This is the first time the Court and the other parties in interest have had an opportunity to review and consider the Debtor's plan.

The Debtor has also moved to strike Dornik's responses in opposition to the Debtor's and Kozel's motions to alter or amend. The bases for the motions to strike are that Dornik's responses were not signed by his attorney of record, Gerald Hunter, but by someone else in his office in violation of Bankruptcy Rule 9011. Further, he argues that Hunter's signature was improperly notarized in violation of the Illinois Notary Public Act. The Debtor thus seeks to have those papers stricken. Hunter replies that he authorized his secretary to sign his name when the papers were due to be filed because he was then out of the country and thus unable to personally affix his signature thereto. Hunter has furnished additional copies of his responses in opposition to the instant motions to alter or amend to which he has personally affixed his signature.

### III. *APPLICABLE STANDARDS*

The Seventh Circuit Court of Appeals has instructed courts to treat all substantive post-judgment motions, regardless of their captions, if filed within ten days of judgment, under Federal Rule of Civil Procedure 59. *United States v. Deutsch,* 981 F.2d 299, 301 (7th Cir.1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin,* 957 F.2d 515, 517 (7th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992); *Charles v. Daley,* 799 F.2d 343, 347 (7th Cir.1986). Motions made thereafter are considered under the provisions of Rule 60 of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule

9024. Because the motions to alter or amend the judgment were served on January 22, 1994, within ten days of the entry of the judgment, the procedural standards and authorities construing Rules 59 and 9023 control rather than the authorities under Rules 60 and 9024.

■■■■■ Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker–Davis Publications, Inc.,* 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir. 1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.,* 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.,* 416 F.Supp. 224, 244 (N.D.Ill. 1976); *In re BNT Terminals, Inc.,* 125 B.R. 963, 976–977 (Bankr.N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals* 125 B.R. at 977. "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.*

### IV. *DISCUSSION*

■■■■■ First, addressing the motion of Kozel to alter the judgment, the Court finds that it has the authority and jurisdiction to enter sanctions against Kozel under Federal Rule of Bankruptcy Procedure 9011. The United States Supreme Court noted the inherent authority of federal courts to enter sanctions. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1992). This Court is a federal court, as a unit of the district court, under 28 U.S.C. § 151, and has the inherent authority to enter sanctions. Such authority is "vested in

courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43, 111 S.Ct. at 2132, *quoting Link v. Wabash R. Co.*, 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962); *see also Generes v. Morrell*, 1994 WL 87375 (N.D.Ill. March 15, 1994). Under the express statutory provisions of section 151, each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred on that judge. That authority includes the power to issue sanctions under Rule 9011. *See In re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir.1985); *In re Memorial Estates, Inc.*, 132 B.R. 19, 22 (N.D.Ill.1991). Kozel has failed to cite any authority to support his contention that the sanctions imposed against him in the nature of mandated continuing legal education are prohibited by law.

Kozel cites to Local General Rule 3.55(A) of the United States District Court for the Northern District of Illinois. He maintains that the Court violated this rule by stating in the Opinion that it was referring the matter to the Executive Committee of the District Court and to the Attorney Registration and Disciplinary Commission. The Court finds this argument disingenuous. The Court's mandated legal education sanctions under Rule 9011 are distinct from attorney discipline in the usual forms of censure, reprimand, suspension, or disbarment from practice, which is within the exclusive authority of those two bodies. The Court merely referred the matter to those disciplinary bodies for the reasons stated in the Opinion, as required by the applicable and cited provisions of the Code of Conduct for United States Judges.

■■■■■■ Further, the Court once again rejects Kozel's allegations that it harbors any

bias against Kozel, thereby requiring the Court to recuse itself. A party seeking recusal has a substantial burden to present factual allegations that overcome the presumption that a judge is impartial. *United States v. Baskes*, 687 F.2d 165, 170 (7th Cir.1981). The standard for deciding a recusal motion pursuant to 28 U.S.C. § 455 is whether the movant's alleged facts, taken as true for purposes of the motion, "would convince a reasonable person that bias and prejudice exists." *Id.* This does not mean that courts should give credence to unsupported, patently incredible or conclusory allegations that have no basis in fact. *See Eaton v. United States*, 458 F.2d 704, 706 (7th Cir.1972), *cert. denied*, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972) (courts should accept allegations as true "except to the extent that they are inherently incredible, merely conclusory rather than statements of fact, or are contradicted by the record").

The Debtor has not been prejudiced in any way by the Court's view of Kozel's performance in this or any other matter. Kozel cites to several other cases, none involving Kozel, over which this Court presides in Joliet, Illinois, to somehow demonstrate that the Court's alleged personal dislike for him has influenced the Court's rulings in the instant case. The true facts are contrary to Kozel's inference that the Court always rules against him.[1]

Moreover, the Court declines to further address Kozel's spray of attacks. The Court will not engage in trading vituperous epithets and irrelevant repartee with Kozel. All such *ad hominem* attacks are merely an attempt to shift the focus of the matter from the merits of the real issues at bar by attacks on almost every other party or officer of the Court involved in this case. Suffice it to say

---

1. The Court notes that there have been several instances wherein Kozel, in other cases for other debtors, has recently received favorable rulings from the Court. First, on January 21, 1994, in the case of *In re Dianna Bibart*, 93 B 24471, the Court denied a landlord's motion to lift the automatic stay and to dismiss the case. There, Kozel correctly and successfully argued on behalf of that debtor that service of process on that debtor was inadequate under Bankruptcy Rule 7004(b)(9). In another recent case, *In re William J. Maass*, 93 B 9059, the Court had dis-

missed the case on the case trustee's motion for the debtor's failure to attend several scheduled 11 U.S.C. § 341 meetings of creditors. Thereafter, on November 1, 1993, the Court entered an agreed order signed by the case trustee, on Kozel's motion, vacating the dismissal order and reinstating the case. Consequently, Kozel's argument that the Court harbors prejudicial feelings against him, which have a negative impact upon his clients, including the Debtor in the case at bar, is without merit.

that these attacks are illogical and material fallacies raised to distract attention from the real issues in this case, and thus are not worthy of further discussion. *See generally* R. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking,* at p. 181 (1989).

The Court will amend the portion of the Opinion which finds that the Debtor failed to pay the first installment of the filing fee. The Debtor has attached a copy of the receipt evidencing payment of $70.00 on January 11, 1994, at 4:27 p.m. The Debtor maintains that the Court failed to ascertain whether the payment had been made. This assertion is untrue. On the morning of January 12, 1994, before the Opinion was entered, the Court made inquiry as to whether any additional payments had been made by the Debtor. A representative of the Fiscal Department of the Clerk's Office advised that no payment had been made. The installment fees paid on the previous day had not yet been posted. Thus, this explains the Court's inaccurate finding that no payment was made. After review of the receipt, the Court finds that a $70.00 payment was made. Consequently, the Court hereby amends the finding in the Opinion that the Debtor failed to make any installment payments.

■ On more significant matters, the motions allege that the Court erred in dismissing the case because the Debtor filed a plan under section 1321. The Debtor argues that this case was filed to stop Dornik's collection action in state court which, he describes as harassment, and to prevent the Debtor from being fired. Dornik's state court activities, which began in 1982, are not proscribed harassment, but rather use of due process to enforce Dornik's final judgment against the Debtor. The Debtor's plan was allegedly mailed by Kozel to Rockford, not to Chicago in which Division of the District the case is pending. The Debtor has attached to his pleadings a copy of a Federal Express air bill. He argues that Kozel was told by an unnamed representative of Federal Express that the plan was filed and a "C. Shabez" had signed for the package. The Court finds that this document on its face does not show that the plan and related papers were in fact filed with the Clerk's Office. It merely

shows that Kozel mailed something to the Clerk's Office in Rockford. There is no document proving actual receipt by the Clerk's Office. There are no affidavits from Kozel as sender, from C. Shabez or a "Tony" of the Clerk's Office as recipient, or the unidentified Federal Express representative as the agent transmitting such documents to support these conclusory allegations. Such allegations could have been supported by affidavit.

It is also significant to note Kozel's statement that he had not checked the court file as of the time he served out the instant motions, but it would come as no surprise to him if the plan was not in the file given the "inadequacies in the Clerk's Office." It is thus ironic for Kozel and the Debtor to argue that the plan was timely filed when neither have personally verified and checked the case file to support such conclusion. In contrast, the Court, on several occasions, has physically reviewed the case file in the Clerk's Office to see if the Debtor's plan was in the file or docketed to show its receipt.

Kozel explains that he chose to send the plan to Rockford because, in his experience, the Clerk's Office in Chicago often misplaces pleadings and the United States Marshal's Office allows documents to "languish in [their] office, waiting to go through security." The tactical filing of papers in one division of the District for a case pending in the other division raises the specter of abuse and confusion. As a result, on January 21, 1994, the District Court proposed new Local General Rule 8 which will deal with the filing of materials in a division other than that to which the case is assigned. Proposed Rule 8 will clearly require that all papers must be filed in the divisional office of the division to which the underlying case is assigned, except as provided in Local General Rule 2.22(D) or by order of court. The rationale behind this proposed Rule is to assure the timely delivery of papers and to reduce the likely confusion in the day to day processing of papers. The Comments to the proposed Rule state that experience suggests a strong likelihood that a motion or pleading intended for one division but filed in another will get lost in

the shuffle. That may have occurred in this matter.

██ The Debtor's plan, supposedly mailed on November 8, 1993, and allegedly received on November 9, 1993, has not been docketed and is still not in the case file. Assuming arguendo that the plan and related papers were so sent, the mailing in itself is not the functional equivalent of a filing. *See, e.g., Chrysler Motors Corp. v. Schneiderman,* 940 F.2d 911, 914 (3d Cir.1991). As the *Schneiderman* court aptly stated, a party can protect itself with minimal expense through the use of certified mail with a return receipt requested or provide for manual filing across the counter in the clerk's office. *Id.* at 914. Filing is completed upon delivery of the papers to the clerk's office. *See New Boston Dev. Co. v. Toler,* 999 F.2d 140, 142 (6th Cir.1993) (filing takes place when documents are tendered to the court clerk); *Cintron v. Union Pacific R. Co.,* 813 F.2d 917, 920–921 (9th Cir.1987) (a complaint is filed when it arrives at the clerk's office). The Federal Express air bill standing alone does not establish that the plan in fact was delivered to or arrived at the Clerk's Office.

██ The Court finds that the Debtor's dilatory tactic of mailing his plan to Rockford rather than to Chicago further evidences his lack of good faith. This smacks of an attempt to not only delay, but also to mislead the Trustee, Dornik, and the Court because it was never mentioned by Kozel at the December 17, 1993 hearing when the Trustee's motion to dismiss was first presented and filed. Kozel merely stated at the hearing that the case had been filed in Rockford. Kozel never filed a written response to the Trustee's motion raising such defense though he was given leave to so plead. Instead, the assertion that the plan had been filed was not raised until after the Court ruled on all pending motions and issued its Opinion.

██ As the Debtor resides in LaSalle County, the proper venue for all matters in this case is the Eastern Division, not the Western Division of the Northern District of Illinois. Local General Rule 2.22(D) only permits a document initiating a case to be filed in the other division, such as the Debt-or's Chapter 13 petition. All subsequent pleadings and papers should have been filed in Chicago, not Rockford. Both the Debtor and Kozel having been through the Chapter 13 process in this District once before in the prior case are aware of the proper venue. They are not free to select at their whim when and where they file required pleadings and other papers in the case. After further review of the case docket and file, the Court finds that the plan has not yet been physically received or lodged in the case file and file stamped. Thus, it has not been timely filed in accordance with Federal Rule of Bankruptcy Procedure 3015(b) in the proper division as prescribed by Local General Rule 1.12.

██ Further, assuming arguendo that the Debtor's plan had been filed (either timely or late), review of the plan, schedules, and statement of affairs appended to the motions shows additional grounds in support of the Court's Opinion. The Court has an obligation to determine whether a debtor carries the burden to show that all elements required of a plan filed under Chapter 13 have been met, whether or not any party in interest objects. *In re Rimgale,* 669 F.2d 426, 431 (7th Cir.1982); *In re Christophe,* 151 B.R. 475, 477 (Bankr.N.D.Ill.1993). The Court must confirm a filed Chapter 13 plan after parties in interest have been given proper notice, if it meets the six requirements of 11 U.S.C. § 1325(a), including the requirements that "the plan compl[y] with the provisions of [Chapter 13] and with the other applicable provisions of this title" and that the debtor "will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(1)–(6); *In re Aberegg,* 961 F.2d 1307, 1308 (7th Cir.1992). Moreover, 11 U.S.C. § 1322(a) provides that a Chapter 13 plan must contain three basic provisions: (1) provide for the submission of all, or such portion of, future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan; (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a dif-

ferent treatment of such claim; and (3) if the plan classifies claims, provide the same treatment for each claim within a particular class. 11 U.S.C. § 1322(a)(1)–(3).

The Debtor's plan does not meet all of the requirements of sections 1322(a) and 1325(a). The schedules disclose that the Debtor has a net monthly take-home pay of $1,780.00. The Debtor's total monthly expenses for over twelve separate categories, however, amount to $2,334.00. This indicates that the Debtor has other unscheduled obligations and creditors. The Debtor has no excess disposable income from which to fund the plan and pay any amount to the Trustee for the benefit of his creditors as sections 1322(a)(1) and 1325(a)(6) require. The Debtor has no surplus of income over expenses to pay the proposed $160.00 per month for fifty-nine months, much less likely make a balloon payment on the sixtieth monthly payment of $10,560.00. Indeed, the plan does not propose to pay anything until the Debtor loses the pending appeal in the Seventh Circuit Court of Appeals. No cause has been shown to extend the plan terms the sixty months or five years proposed, rather than the three years provided in section 1325(c). As such, the plan shows no real intent to reorganize. Rather, the Debtor seeks the benefit of the automatic stay without having to post a supersedeas bond to stay enforcement of Dornik's $20,000.00 judgment. The Court does not need to reach the issue of whether the Debtor's plan was proposed in good faith and not forbidden by law under section 1325(a)(3), because the plan fails to meet the above requisite elements of sections 1322(a)(1), 1325(a)(6) and 1325(c).

■ The terms of the Debtor's plan show that which was inferred in the Opinion. The motivation of the Debtor in seeking Chapter 13 relief was nothing more than his latest desperate attempt to stave off the enforcement of Dornik's judgment in lieu of posting a supersedeas bond. The filing of a bankruptcy case in lieu of posting a supersedeas bond has been found by other courts to be in bad faith. *See, e.g., In re Sparklet Devices, Inc.,* 154 B.R. 544, 548–549 (Bankr.E.D.Mo. 1993); *In re Edwards,* 140 B.R. 515 (Bankr. W.D.Mo.1992); *In re Roberts,* 117 B.R. 677 (Bankr.N.D.Okla.1990); *In re Harvey,* 101 B.R. 250, 252 (Bankr.D.Nev.1989); *In re Davis,* 93 B.R. 501, 503–504 (Bankr.S.D.Tex. 1987); *In re Karum Group, Inc.,* 66 B.R. 436, 438 (Bankr.W.D.Wash.1986). A scant two days after the entry of the Court's Opinion, the Ninth Circuit Court of Appeals held and reaffirmed its view that a successive Chapter 13 petition filed on the eve of state court action constitutes bad faith where the debtor only intended to defeat state court litigation. *In re Eisen,* 14 F.3d 469 (9th Cir.1994), *citing In re Chinichian,* 784 F.2d 1440, 1445–1446 (9th Cir.1986). The Court therefore concludes from the totality of the circumstances that this case was not a good faith filing, and thus the Trustee's motion to dismiss was properly granted under 11 U.S.C. § 1307(c).

■ Finally, the Court denies the motions to strike. The Debtor contends without citing any supporting case law that the response was actually signed by one of Hunter's employees in violation of Bankruptcy Rule 9011, as was the additional response which bears his facsimile signature. In reply, Hunter has now furnished the Court copies of both responses to which he has personally affixed his signature. Bankruptcy Rule 9011(a) provides in relevant part:

> Every petition, pleading, motion ... served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed.... The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken *unless it is signed promptly after the omission is called to the attention of the person whose signature is required.* If a document is signed in violation of this rule,

the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed.R.Bankr.P. 9011(a) (emphasis added).

Bankruptcy Rule 9011 and Federal Rule of Civil Procedure 11 are analogous and the authorities construing Rule 11 are applicable to the case at bar. Rule 9011 rather than Rule 11 (as recently amended effective December 1, 1993) applies in this forum. The current version of Bankruptcy Rule 9011 was not recently amended to be discretionary as were the provisions of amended Rule 11. The older case law on the former version of Rule 11, however, is still applicable.

The Court has jurisdiction to impose sanctions under these Rules. *In re TCI, Ltd.,* 769 F.2d 441, 448 (7th Cir.1985); *In re Memorial Estates, Inc.,* 132 B.R. 19, 22 (N.D.Ill. 1991). The primary purpose of both Rules is to deter unnecessary filings for the benefit of the judicial system. *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077–1080 (7th Cir.1987), *cert. denied,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). It is well established that "[t]he standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Bds.,* 830 F.2d 1429, 1435 (7th Cir.1987); *see Dreis & Krump Mfg. Co. v. International Asso. of Machinists & Aerospace Workers, Dist. No. 8,* 802 F.2d 247, 255 (7th Cir.1986).

The Seventh Circuit has interpreted Rule 11 as creating four criteria:

The Rule contains several strands. There must be "reasonable inquiry" into both fact and law; there must be good faith (that is, the paper may not be interposed "to harass"); the legal theory must be objectively "warranted by existing law or a good faith argument" for the modification of existing law; and the lawyer must believe that the complaint is "well grounded in fact." The attorney filing the complaint or other paper must satisfy all four requirements.

*Thompson v. Duke,* 940 F.2d 192, 195 (7th Cir.1991), *quoting Szabo,* 823 F.2d at 1080.

A pleading, motion, or paper is not well-grounded in fact if it is contradicted by uncontroverted evidence that was or should have been known to the attorney or the party signing the filing. *Frazier v. Cast,* 771 F.2d 259, 263–265 (7th Cir.1985). A filing or pleading is well-grounded in fact if it has a reasonable basis in fact. *Beverly Gravel, Inc. v. DiDomenico,* 908 F.2d 223 (7th Cir. 1990) (factual pleading error did not rise to level of sanctionable conduct). "A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.,* 498 U.S. 533, 542, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991).

The Court finds that Hunter has not violated the spirit of Rule 9011. Now that Hunter has signed the papers, the omission of his manually applied signature has been promptly corrected after it was called to his attention. There is no indication from the papers that Hunter failed to conduct a reasonable inquiry into the facts and the law upon filing the responses. Moreover, there is no evidence of any improper motive on the part of Hunter. The mere fact that he had an employee, acting as his agent, sign his name because he was out of the country and could not physically affix his signature to the pleadings does not constitute a violation of Rule 9011 if he so authorized such agent to act on his behalf. He has now supplied his own manually executed signature to the relevant pleadings. Kozel's arguments concerning the defective notarization of Hunter's agent's signature are more appropriately raised and determined elsewhere pursuant to the Illinois Notary Public Act, 5 ILCS 312/1–104 *et seq.*

## V. *CONCLUSION*

For the foregoing reasons, the Court hereby denies the motion of Kozel to alter or amend the judgment. The motion of the Debtor to alter or amend the judgment is granted, in part, because the Debtor has paid the installment of the filing fee. The case remains dismissed with prejudice. The motions to strike are denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

## *ORDER*

For the reasons set forth in a Memorandum Opinion dated the 31st day of March, 1994, the Court hereby denies the motion of Kenneth A. Kozel to alter or amend a judgment entered by the Court on January 12, 1994. The Court grants, in part, the motion of John A. Maurice to amend the judgment. The case, however, remains dismissed with prejudice. The motions of John A. Maurice to strike the response and the additional response of John F. Dornik to the motion to alter or amend are denied.